Robert Ukeiley (admitted *Pro Hac Vice*)
Law Office of Robert Ukeiley
435R Chestnut Street, Suite 1
Berea, KY 40403
Telephone: (859) 986-5402
Email:  rukeiley@igc.org
*Counsel for Plaintiffs Midwest Environmental Defense Center and Sierra Club*

JAMES JAY TUTCHTON (CA Bar No. 150908)
WildEarth Guardians
6439 E. Maplewood Ave.
Centennial, CO 80111
Telephone: (720) 301-3843
Email: jtutchton@wildearthguardians.org
*Counsel for Plaintiff WildEarth Guardians*
(Additional counsel listed below)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

_____
WILDEARTH GUARDIANS,                    )
    Plaintiff,                              ) Case No. 4:11-cv-05651-YGR
v.                                       )
LISA P. JACKSON,                         )
in her official capacity as Administrator of the   )
United States Environmental Protection Agency,   )  consolidated with,
Defendant.                               )
_____)

_____
MIDWEST ENVIRONMENTAL DEFENSE           )
CENTER, and                             )Case No. 4:11-cv-05694-YGR
SIERRA CLUB,                            )
    Plaintiffs,                           )PLAINTIFFS' MOTION FOR
v.                                       )SUMMARY JUDGMENT
LISA P. JACKSON,                         )
in her official capacity as Administrator of the   )
United States Environmental Protection Agency,   ) NOTICED FOR HEARING
Defendant.                               )  JUNE 5, 2012 AT 2:00 PM
_____)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

28

1    Plaintiffs WildEarth Guardians, Midwest Environmental Defense Center, and Sierra Club

2  respectfully request that the Court enter summary judgment for them on all claims in these two

3  consolidated cases.  The Court has set this motion for hearing on June 5, 2012 at 2:00 pm.

4    As explain in detail in the accompanying brief, Plaintiffs are entitled to summary

5  judgment because Defendant Lisa P. Jackson, in her official capacity as Administrator of the

6  United States Environmental Protection Agency (EPA) has violated three mandatory duties with

7  regard to implementing the 2008 ozone National Ambient Air Quality Standards (NAAQS).  She

8  has failed, by the Congressionally mandated deadline, to: (1) making findings that 40 states have

9  wholly failed to submit and two states have partially failed to submit "Infrastructure" state

10  implementation plans (SIPs) for the 2008 ozone NAAQS; (2) promulgate prevention of

11  significant deterioration regulations for the 2008 ozone NAAQS; and (3) failed to approve or

12  disapprove, in whole or part, the 2008 ozone NAAQS Infrastructure SIP submittals for

13  Tennessee and Kentucky.  The Court should order EPA to complete task one within 30 days of

14  its order, task two within 12 months of its order and task three within five months of its order as

15  set out in detail in Plaintiffs' proposed order.

16                    Respectfully submitted,

17                    /s Robert Ukeiley

18                    _____
                     ROBERT UKEILEY (Admitted *Pro Hac*
19                   *Vice*)
                     Law Office of Robert Ukeiley
20                   435R Chestnut Street, Suite 1
                     Berea, KY 40403
21                   Telephone: (859) 986-5402
                     Facsimile:  (866) 618-1017
22                   rukeiley@igc.org

23

28

1

KRISTIN HENRY (Cal. Bar No. 220908)
Sierra Club

2

85 Second Street, 2nd Floor
San Francisco, CA 94105

3

Telephone: (415) 977-5716
Facsimile:  (415) 977-5793

4

Kristin.Henry@sierraclub.org

5

*Counsel for Plaintiffs Midwest*
*Environmental Defense Center and Sierra*

6

*Club*

7

/s James Jay Tutchton

8

_____
JAMES JAY TUTCHTON
(CA Bar No. 150908)

9

WildEarth Guardians
6439 E. Maplewood Ave.

10

Centennial, CO 80111
Telephone: (720) 301-3843

11

Email: jtutchton@wildearthguardians.org

12

*Counsel for Plaintiff WildEarth Guardians*

Dated: April 13, 2012

13

14

15

16

17

18

19

20

21

22

23

28

Robert Ukeiley (admitted *Pro Hac Vice*)
Law Office of Robert Ukeiley
435R Chestnut Street, Suite 1
Berea, KY 40403
Telephone: (859) 986-5402
Email:  rukeiley@igc.org

Counsel for Plaintiffs Midwest Environmental Defense Center and Sierra Club

JAMES JAY TUTCHTON (CA Bar No. 150908)
WildEarth Guardians
6439 E. Maplewood Ave.
Centennial, CO 80111
Telephone: (720) 301-3843
Email: jtutchton@wildearthguardians.org

Counsel for Plaintiff WildEarth Guardians
(Additional Counsel Listed Below)

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS,<br>        Plaintiff,<br>v.<br>LISA P. JACKSON,<br>in her official capacity as Administrator of the<br>United States Environmental Protection Agency,<br>Defendant. | )  Case No. 4:11-cv-5651-YGR<br>)<br>)<br>)<br>)<br>)  consolidated with,<br>)<br>) |
| MIDWEST ENVIRONMENTAL DEFENSE<br>CENTER, and<br>SIERRA CLUB,<br>        Plaintiffs,<br>v.<br>LISA P. JACKSON,<br>in her official capacity as Administrator of the<br>United States Environmental Protection Agency,<br>Defendant. | )<br>)Case No. 4:11-cv-5694-YGR<br>)<br>)PLAINTIFFS'BRIEF IN SUPPORT OF<br>)ITS MOTION FOR SUMMARY<br>)JUDGMENT<br>)<br>)  NOTICED FOR HEARING<br>)   JUNE 5, 2012 AT 2:00 PM<br>) |

28

**TABLE OF CONTENTS**

I.  INTRODUCTION...................................................................................................1

II.  LEGAL BACKGROUND AND STANDARD OF REVIEW...................................3

    A.  LEGAL BACKGROUND OF THE CLEAN AIR ACT:
        NATIONAL AMBIENT AIR QUALITY STANDARDS AND STATE
        IMPLEMENTATION PLAN SUBMITTALS…………...............................3

    B.  LEGAL STANDARD FOR SUMMARY JUDGMENT..............................5

III.  ARGUMENT………………………….....................................................6

    A.  PLAINTIFFS HAVE STANDING TO BRING THIS ACTION…...……7

        1.  HARM FROM EXPOSURE TO OZONE POLLUTION …….....…..7

        2.  PROCEDURAL HARM…………………………….………..8

        3.  INFORMATIONAL HARM…………………………….……...9

        4.  STANDING FOR ONE IS STANDING FOR ALL………..…….....9

        5.  WILDEARTH GUARDIANS AND MIDWEST
            ENVIRONMENTAL DEFENSE CENTER CAN
            ALSO ESTABLISH STANDING……………………….………..10

    B.  THE ACT IMPOSES MANDATORY DUTIES FOR EACH OF
        THE CLAIMS IN THIS CASE…………………………………….……10

    C.  PLAINTIFFS ARE ENTILTED TO SUMMARY JUDGEMENT
        AS TO EPA'S FAILURE TO MAKE FINDINGS OF FAILURE
        TO SUBMIT 2008 OZONE NAAQS INFRASTRUCTURE SIPS………….13

        1.  EPA IS LIABLE FOR FAILING TO MAKE FINDINGS OF
            FAILURE TO SUBMIT 2008 OZONE INFRASTRUCTURE
            SIPS………………………………………………….………13

        2.  THE COURT SHOULD REQUIRE EPA TO MAKE THE
            FINDINGS OF FAILURE TO SUBMIT WITHIN 30 DAYS
            OF ISSUANCE OF THE COURT'S ORDER………………….....14

            a.  THERE ARE SERIOUS PUBLIC HEALTH AND
                WELFARE IMPACTS CAUSED BY EPA'S

ILLEGAL DELAY IN MAKING A FINDING OF FAILURE TO SUBMIT…………………………………..14

b.   MAKING THE FINDING IS A RELATIVELY SIMPLE TASK AS DEMONSTRATED BY PLAINTIFFS' EXPERT AND PLAINTIFFS' PREPARATION OF A SAMPLE FINDING……………………………………..15

c.   EPA'S ABYSMAL RECORD OF DELAY IN IMPLEMENTING THE ACT MAKES ANY ASSERTIONS BY EPA ABOUT THE APPROPRIATE TIMING OF THE FINDING SUSPECT………………..17

D.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AS TO EPA'S FAILURE TO PROMULGATE PREVENTION OF SIGNIFICANT DETERIORATION REGULATIONS…………………20

1.   EPA IS LIABLE FOR FAILING TO PROMULGATE PREVENTION OF SIGNIFICANT DETERIORATION REGULATIONS FOR THE 2008 OZONE NAAQS…………...20

2.   THE COURT SHOULD REQUIRE EPA TO ISSUE A PROPOSED PREVENTION OF SIGNIFICANT DETERIORATION RULE WITHIN EIGHT MONTHS AND A FINAL RULE WITHIN A YEAR……………………...20

E.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGEMENT AS TO EPA'S FAILURE TO TAKE FINAL ACTION ON THE TENNESSEE AND KENTUCKY 2008 OZONE INFRASTRUCTURE SIP SUBMITTALS…………………………….………21

1.   EPA IS LIABLE FOR FAILING TO TAKE FINAL ACTION ON THE KENTUCKY AND TENNESSEE 2008 OZONE INFRASTRUCTURE SIP SUBMITTALS……………21

2.   THE COURT SHOULD REQUIRE EPA TO ISSUE A PROPOSED RULE WITHIN THREE MONTHS AND A FINAL RULE WITHIN FIVE MONTHS ON THE KENTUCKY AND TENNESSEE SUBMITTALS…………………………..22

IV.   CONCLUSION.....................................................................24

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Alabama Power Co. v. Costle*, 636 F.2d 323 (D.C. Cir. 1979)……………………………...19

4

*American Lung Ass'n v. Browner*, 884 F.Supp. 345 (D.Arix. 1994)…...……... .……18, 19

5

*American Trucking Ass'ns. v. EPA*, 283 F.3d 355 (D.C. Cir. 2002)……...….…………19

6

*Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)……………….….……….…….6

7

*Board of Natural Resources of State of Wash. v. Brown*,
992 F.2d 937, (9th Cir. 1993)…………………………………………….…………….10

8

*Bowsher v. Synar*, 478 U.S. 714 (1986)…………………………….…....….…....…..9

9

*Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001)……………………………………11

10

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001)……………….…………8

11

*Celotex Corporationv. Catrett*, 477 U.S. 317 (1986)……………………….….……….6

12

*Center for Biological Diversity v. Abraham*,
218 F.Supp.2d 1143 (N.D.Cal. 2002)……………………………………...……….…9

13

14

*Center for Biological Diversity v. Jackson*, 3:10-cv-1846-MMC (N.D. Cal. 2010)……....17

15

*Center for Biological Diversity v. Norton*, 254 F.3d 833 (9th Cir.2001)……………….....11

16

*Clinton v. City of New York*, 524 U.S. 417 (1998)…………………………….………...9

17

*Coalition for Clean Air v. Southern California Edison Co.*,
971 F.2d 219, 228 (9th Cir. 1992)…………………………………….…………...17

18

*Communities for a Better Environment v. US EPA*,
3:07-cv-3678-JSW (N.D. Cal. 2007)………………………………………………...17

19

20

*Douglas County v. Babbitt*, 48 F.3d 1495 (9th Cir. 1995),
*cert. denied*, 516 U.S. 1042 (1996)…………………………………………..……..8

21

*Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir.1999)……………………………11

22

*Friends of the Earth v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167 (2000)…..…..7

23

28

*Hunt v. Washington State Apple Advertising Comm'n*, 432 US 333 (1997)……..……......7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)………………………………......8

*Natural Resources Defense Council, Inc. v. EPA*,
22 F.3d 1125 (D.C. Cir. 1994)……………………………………………...........11-12

*Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985)…………………………..6

*Oregon Natural Desert Ass'n v. Dombeck*, 172 F.3d 1092, 1094 (9th Cir. 1998)………...8

*Sierra Club v. Jackson*,3:10-cv-4060-CRB (N.D. Cal. 2010)…………………………17, 23

*Sierra Club v. Thomas*, 658 F.Supp. 165 (N.D.Cal. 1987)…………………………………..18

*Summers v. A. Teichert & Son,Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997)………...……….5

*United States v. Monsanto*, 491 U.S. 600 (1989)……………………………………………11

*U.S. Dept. of Labor v. Triplett*, 494 U.S. 715 (1990)…………………………………...…..9

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977)…………………………………………………………………10

*Watt v. Energy Action Educational Foundation*, 454 U.S. 151 (1981)………..……...9-10

*Whitman v. American Trucking Associations*, 531 U.S. 457 (2001)………….…………...19

*WildEarth Guardians v. Jackson*, 4:09-cv-2453-CW (N.D. Cal. 2009)........................4, 17

*WildEarth Guardians v. Jackson*, 4:11-cv-2205-SI (N.D. Cal. 2011)………….………...17

**FEDERAL STATUTES**

5 U.S.C. § 553(b)(B)………………………………………………….…………...15

42 U.S.C. § 7410(a)(1)……………………………………………………………….3, 13

42 U.S.C. § 7410(a)(2)(A)………………………………...………………………...3

42 U.S.C. § 7410(a)(2)(A)-(M)………………………………...…... ……………...3

42 U.S.C. § 7410(a)(2)(B)&(F)…..………………………………………………….3

42 U.S.C. § 7410(a)(2)…………………………….……………………….……..3, 10

42 U.S.C. § 7410(a)(2)(I)…………………………………..…………………………………3

42 U.S.C. § 7410(a)(2)(C)…………………………………………………………………3, 24

42 U.S.C. § 7410(a)(2)(D)(i)………………………………………………..…………….4, 18, 23

42 U.S.C. § 7410(a)(2)(D)(i)(I)……………………………………………….………..4, 8, 22, 24

42 U.S.C. § 7410(a)(2)(E)(ii)………………………………………………………………...23

42 U.S.C. § 7410(c)(1)……………………………………………………………...9, 22

42 U.S.C. § 7410(c)(1)(A)……………………………………………………..………...5, 22

42 U.S.C. § 7410(c)(1)(B)…………………………………………………………......22

42 U.S.C. § 7410(k)(1)(B)…………………..………………………5, 9 - 13, 21, 22, 24

42 U.S.C. § 7410(k)(2)&(3)………………………………………5, 12,13, 21, 22, 24

42 U.S.C. § 7410(k)(4)……………………………………………………………24

42 U.S.C. § 7476(a)………………………………………………………………...12, 20

42 U.S.C. § 7604(a)(2)………………………………………………………….…...10

**CODE OF FEDERAL REGULATOINS**

40 CFR § 52.21(b)(23)(i)(2011)..............................................................20

**FEDERAL REGISTER**

62 Fed. Reg. 38,652 (July 18, 1997)………………………………..…………...19

63 Fed. Reg. 57,356 (Oct. 27, 1998)………..…………………………..…………...4

70 Fed. Reg. 21,147 (Apr. 25, 2005)…………..…………………………..……...16

70 Fed. Reg. 25,162 (May 12, 2005)…………..………………………..…………...4

73 Fed. Reg. 16,205 (Mar. 27, 2008)………………..……………..…………...16

1

73 Fed. Reg. 16,436 (Mar. 27, 2008)...................................................................13, 14

2

73 Fed. Reg. 62,902 (Oct. 22, 2008)…………………………………………………16

3

76 Fed. Reg. 41,088 (July 13, 2011)…………………………………………....23

4

76 Fed. Reg. 48,208 (Aug. 8, 2011)………………………………………...…4

5

76 Fed. Reg. 80,760 (Dec. 27, 2011)…………………….……………………18

6

76 Fed. Reg. 82,133 (Dec. 30, 2011)…………………...…………………………18

7

77 Fed. Reg. 4,808 (Jan. 31, 2012)…………………………………………....21

8

77 Fed. Reg. 14,976 (Mar. 14, 2012)…………………………………………...23

9

**FEDERAL RULES OF CIVIL PROCEDURE**

10

Fed.R. Civ. P. 56(c)……………………………………..…………….…1, 6

11

Fed.R. Civ. P. 56(e)……………………………………………….….…6

12

Fed. R. Civ. P. 1……………………………………………………...6

13

14

**LEGISLATIVE MATERIALS**

15

H.Rep.No. 91-1146, 91st Cong., 2d Sess. 1 (1970) U.S.Code
Cong. & Admin. News 5356 (1970)……………………………...........................3

16

17

18

19

20

21

22

23

28

1                                    **GLOSSARY**

2   CSAPR:        Cross State Air Pollution Rule a/k/a Transport Rule

3   EPA:          United States Environmental Protection Agency

4   NAAQS:        National Ambient Air Quality Standard

5   PSD:          Prevention of Significant Deterioration

6   SIP:          State Implementation Plans

7   NOx:          Nitrogen Oxides

8   CAIR:         Clean Air Interstate Rule

9   FIP:          Federal Implementation Plan

10  PM:           Particulate Matter

11  PM2.5:        Particulate Matter with a diameter of 2.5 micrometers or less

12

13

14

15

16

17

18

19

20

21

22

23

28

# I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 56(c) and the Court's March 16, 2012 Order, [Dk#32], Plaintiffs WildEarth Guardians, Midwest Environmental Defense Center, and Sierra Club move for summary judgment on all claims in both complaints in this consolidated case.[1]  As explained below, these are "missed deadline" claims against a federal agency that has blatantly missed statutory deadlines designed to protect public health and welfare. The Clean Air Act sets mandatory deadlines for Defendant Lisa P. Jackson, United States Environmental Protection Agency ("EPA") Administrator, to issue a finding of failure to submit for each state that has not submitted a required "Infrastructure" state implementation plan for the 2008 ozone National Ambient Air Quality Standard ("NAAQS"), to complete a rulemaking process for Prevention of Significant Deterioration regulations for the 2008 ozone NAAQS, and to take final action on infrastructure state implementation plans which states have already submitted to EPA for the 2008 ozone NAAQS.

The main issue in this case is the remedy; that is, the amount of time the Court should grant EPA to comply with its mandatory duties.  Liability should not be seriously contested, aside from EPA's pending motion to dismiss only Plaintiffs' claim related to the PSD rulemaking.  These duties have serious consequences for the implementation of the 2008 ozone NAAQS, and thus for public health and welfare.  Adverse impacts arise from ground-level ozone ("ozone") pollution, commonly referred to as smog.  Ozone represents a serious air quality issue in many parts of the United States.  Exposure to ozone pollution exacerbates asthma, pneumonia,

---

[1] Midwest Environmental Defense Center and Sierra Club's second amended complaint, [Dk#30] in case 4:11-cv-5694 contains three claims, one of which does not appear in WildEarth Guardians' complaint in case 4:11-cv-5651. The order of the two identical claims in the complaints also differs.  This brief will refer to the numbering used in the second amended complaint in case 4:11-cv-5694 unless otherwise noted.  However, to be clear, Plaintiffs are moving for summary judgment on all three claims in the second amended complaint in case 4:11-cv-5694 and the two claims in the complaint in case 4:11-cv-5651.

and bronchitis, and can result in the permanent scarring of lung tissue.  Fact 49.  Exhaustive scientific review by EPA has determined that ozone also causes emergency department visits, hospital admissions for respiratory causes, and even death.  Fact 50.  Those most at risk from ozone pollution are children; active people, *e.g.,* runners and people who do manual labor outside; people with pre-existing lung and heart diseases such as asthma; and older people.  Fact 51.  Moreover, the detrimental effects extend beyond public health.  Ozone pollution also interferes with vegetation's ability to function properly.  This interference results in injuries such as decreased crop yields and damage to native ecosystems.  Fact 52.

Despite these serious consequences—and Congressional mandates—EPA has failed to: (1) issue findings of failure to submit "Infrastructure" State Implementation Plans (SIPs) for the 2008 ozone NAAQS for all States that have not submitted;[2] (2) complete a rulemaking process to update the PSD regulations for the 2008 ozone NAAQS; and (3) take final action on 2008 ozone NAAQS Infrastructure SIP submittals by Kentucky and Tennessee.  In light of the grave nature of the injury from ozone pollution, EPA's history of delay, and the limited scope of the work needed to be done—especially for the finding of failure to submit—Plaintiffs request that the Court not countenance any EPA request for further delay and require EPA to adhere to the reasonable schedule that Plaintiffs propose below.

---

[2] This claim addresses the following states and territories.  Each has not submitted anything unless otherwise indicated: Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Delaware, Hawaii, Idaho (excluding sections 110(a)(2)(D)(i) and (G)), Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon (excluding section 110(a)(2)(D)(i)), Pennsylvania, Puerto Rico, Rhode Island, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.  For the purposes of claim one, "states" and "42 states" refers to this list.

## II.   LEGAL BACKGROUND AND STANDARD OF REVIEW

### A.   Legal Background of the Clean Air Act: National Ambient Air Quality Standards and State Implementation Plan Submittals

Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 1146, 91st Cong., 2d Sess. 1, 1, 1970 U.S. Code Cong. & Admin. News 5356, 5356. To promote this, the Act requires EPA to set National Ambient Air Quality Standards for certain pollutants, including ozone.[3] Within three years of a National Ambient Air Quality Standard's promulgation or revision, each state must submit a state implementation plan that provides for the "implementation, maintenance, and enforcement" of the standard. 42 U.S.C. § 7410(a)(1). These SIPs are known as "Infrastructure" SIPs because they establish the infrastructure of a state's basic air pollution control program. Other SIPs address other aspects of air pollution control, such as SIPs to clean up the air in specific nonattainment areas, or regional haze SIPs to get rid of haze in specific national parks. These SIPs are, not surprisingly, known as Nonattainment area SIPs and Regional Haze SIPs, respectively. The requirements for Infrastructure SIPs are set forth in 42 U.S.C. § 7410(a)(2)(A) – (M). These include, for example, enforceable emission limits for sources of pollution, 42 U.S.C. § 7410(a)(2)(A), and a network of ambient air pollution monitors and monitors of emissions from sources of pollution, 42 U.S.C. § 7410(a)(2)(B) & (F).

EPA maintains that two elements listed in 42 U.S.C. § 7410(a)(2)—42 U.S.C. § 7410(a)(2)(I) and (a)(2)(C) to the extent that it refers to nonattainment new source review permitting—are not subject to the three-year deadline in 42 U.S.C. § 7410(a)(1), and thus outside

---

[3] Plaintiffs have already provided the Court with an explanation of how the parts of the Clean Air Act relevant to this case work. *See* Case 4:11-cv-5694 2nd Comp. ¶¶ 14-20; Case 4:11-cv-5694 Plaintiffs' Opposition to Motion to Dismiss Plaintiffs' Second Claim for Relief at p. 2 – 7. Plaintiffs will not repeat that explanation here.

1    the scope of this case.  EPA's position is that these two provisions are subject to a separate

2    deadline in the statute dealing with nonattainment areas.  For the purposes of this motion,

3    Plaintiffs do not dispute EPA's position.

4          The Infrastructure SIP elements at 42 U.S.C. § 7410(a)(2)(D)(i) are referred to as the

5    Good Neighbor provisions. They require each state to ensure that its pollution is not causing

6    certain adverse impacts in downwind states such as contributing to nonattainment areas or

7    interfering with maintenance of the NAAQS.  *Id.* at § 7410(a)(2)(D)(i)(I).  Just last week EPA

8    finished complying with its obligations in a deadlines suit regarding the Good Neighbor

9    provisions for the 1997 ozone NAAQS.  *See WildEarth Guardians v. Jackson*, 4:09-cv-2453-

10   CW (N.D. Cal).  The Good Neighbor provisions of the Infrastructure SIP for 1997 ozone

11   NAAQS and the 1997 PM2.5 NAAQS have been implemented through programs called the NOx

12   SIP Call, the Clean Air Interstate Rule (CAIR), and the Transport Rule.[4]  *See* 63 Fed. Reg.

13   57,356 (Oct. 27, 1998); 70 Fed. Reg. 25,162 (May 12, 2005); 76 Fed. Reg. 48,208 (Aug. 8,

14   2011).  The NOx SIP Call and CAIR have resulted in reductions of hundreds of thousands of

15   tons of air pollution which has lowered ambient pollution levels for millions of people.[5]

16   However, the NOx SIP Call, CAIR, and the Transport Rule were designed to comply with the 85

17   parts per billion 1997 ozone NAAQS,[6] not the more protective 75 parts per billion 2008 ozone

18   NAAQS.   The relief Plaintiffs seek in this case will be one of the first step in moving EPA

19   towards getting the emission reductions that will get ozone pollution below the 75 parts per

20   billion 2008 ozone NAAQS and ensuring that it stays there.

21

22   [4] The Transport Rule is also sometimes referred to as the Cross State Air Pollution Rule (CSAPR).
     [5] The Transport Rule was stayed by the U.S. Court of Appeals for the D.C. Circuit on December 30, 2011.
     [6] The 1997 ozone NAAQS is written in the regulations as 0.08 parts per million which equals 80 parts per billion.
23   Unfortunately, EPA chose to use a rounding convention that effectively raised the 1997 ozone NAAQS to the less
     protective level of 85 parts per billion.

28

1    The Clean Air Act requires EPA to determine whether there has been an administratively

2    complete state implementation plan submittal, including an Infrastructure SIP, "no later than 6

3    months after the date, if any, by which a State is required to submit the plan or revision." 42

4    U.S.C. § 7410(k)(1)(B).  *See also* 42 U.S.C. § 7410(c)(1)(A) (EPA must step in and promulgate

5    a Federal Implementation Plan if it finds a state has failed to make a required SIP submission).

6    If a state fails to submit any required state implementation plan, there is no submittal that may be

7    deemed administratively complete and EPA must make a determination stating that the state

8    failed to submit the required state implementation plan.  42 U.S.C. 7410(k)(1)(B).  This is

9    commonly referred to as a "finding of failure to submit."  This is the mandatory duty at issue in

10   claim one.

11   EPA also has a mandatory duty to promulgate regulations to prevent significant

12   deterioration not more than 2 years after the date of promulgation of a NAAQS.  This is the

13   mandatory duty at issue in claim two and EPA's motion to dismiss.

14   If a state does make a SIP submittal, EPA has a mandatory duty to take final action on

15   any administratively complete SIP submittal by approving in full, disapproving in full, or

16   approving in part and disapproving in part within 12 months of the date the submittal is deemed

17   administratively complete. 42 U.S.C. § 7410(k)(2) and (3). This is the mandatory duty at issue in

18   claim three.

19       **B.        Legal Standard for Summary Judgment**

20   Summary judgment is appropriate if there is no genuine dispute of material fact and the

21   moving party is entitled to judgment as a matter of law.  *Summers v. A. Teichert & Son,*

22   *Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997). Federal Rule of Civil Procedure 56 provides, in

23   pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions,

28

1   answers to interrogatories, and admissions on file, together with the affidavits, if any,

2   show that there is no genuine issue as to any material fact and that the moving party is

3   entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

4   When the evidence is "so one-sided that one party must prevail as a matter of law,"

5   summary judgment is appropriate. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

6   When the moving party has demonstrated that there is no material issue of fact for trial, the

7   "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings,

8   but…must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P.

9   56(e).

10   Summary judgment is not treated as "a disfavored procedural shortcut" but as "an

11   integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and

12   inexpensive determination of every action." *Celotex Corporation v. Catrett*, 477 U.S. 317, 327

13   (1986) ( "quoting Fed. R. Civ. P. 1").  Summary judgment is a particularly appropriate tool for

14   resolving claims challenging agency action. *See Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770

15   (9th Cir. 1985).  Accordingly, summary judgment is entirely appropriate in the instant case

16   because the issues presented address only the legality of EPA's failure to perform its mandatory

17   duties.

18   **III.    ARGUMENT**

19   EPA is liable under the Clean Air Act for (1) failure to issue a finding of failure to submit

20   for each state that has not submitted a required Infrastructure SIP for the 2008 ozone NAAQS,

21   (2) failure to promulgate PSD regulations for the 2008 ozone NAAQS, and (3) failure to take

22   final action on Kentucky and Tennessee submittals of Infrastructure SIPs for the 2008 ozone

23   NAAQS.  In this case, it is critical that the Court order EPA to follow a reasonable schedule that

28

1    requires Defendant to promptly complete its mandatory duties.  This is necessary to protect the

2    public from serious risks posed by states that have not implemented the 2008 ozone NAAQS.

3        **A.    Plaintiffs Have Standing to Bring this Action**

4        An organization has standing to bring this suit on behalf of its members when: (1) its

5    members have standing to sue in their own right; (2) the interests at stake are germane to its

6    organizational purpose; and (3) neither the claim asserted nor the relief requested requires the

7    members to participate directly in the lawsuit. *See Hunt v. Washington State Apple Advertising*

8    *Comm'n*, 432 US 333, 343 (1997).  The latter two conditions are easily satisfied here. *See* Decl.

9    of Neil Carman ¶ 3; Decl. of Yolanda Andersen ¶¶ 2-4;Decl. of Francis Blake ¶¶ 4-10; Decl. of

10   James Kleissler ¶¶ 4-11.

11       With regard to the first condition, individual organizational members have standing to

12   sue in their own right if they have suffered "an 'injury in fact' that is (a) concrete and

13   particularized and (b) actual or imminent, not conjectural or hypothetical…" *See Friends of the*

14   *Earth v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180 (2000).  These injuries must

15   be "fairly traceable to the challenged action of [D]efendant; and…. It is likely, as opposed to

16   merely speculative, that the [injuries] will be redressed by a favorable decision." *Id.* at 180-81.

17           **1.    Harm from exposure to ozone pollution**

18       Sierra Club members live, work, and/or recreate in areas that are adversely impacted by

19   ozone.  *See e.g.* Decl. of Francis Blake ¶¶ 3-7; Decl. of James Kleissler ¶¶ 3-8.  Sierra Club has

20   over 600,000 members including members in all of the States at issue in the case, including the

21   District of Columbia and Puerto Rico.  *See* Decl. of Yolanda Andersen ¶ 7.  Sierra Club

22   members such as Francis Blake and James Kleissler have asthma, which puts them in the class of

23   people who are particularly susceptible to harm from ozone pollution.  Decl. of Francis Blake ¶¶

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT P a g e  | **7**
4:11-cv-5651-YGR consolidated with 4:11-cv-5694-YGR

28

6, 10; Decl. of James Kleissler ¶¶ 6-7; Fact 51.  Mr. Kleissler notes that his asthma symptoms are worse on bad air days.  Decl. of James Kleissler ¶ 7.  Not only does having asthma and having asthma attacks harm Sierra Club members physically, it harms them economically because they have to spend money on medications. Decl. of Francis Blake ¶ 11; Decl. of James Kleissler ¶ 7.

These injuries of exposure to ozone pollution are traceable to, and would be redressed by, EPA resolving EPA's failure to issue findings of failure to submit for states that have not submitted required state implementation plans for the 2008 ozone NAAQS, failure to issue Prevention of Significant Deterioration regulations for the 2008 ozone NAAQS, and failure to take final action on the Kentucky and Tennessee Infrastructure SIP submittals for the 2008 ozone NAAQS as all three of these mandatory duties are designed to lessen people's exposure to harmful ozone pollution.  *See e.g.* Decl. of Francis Blake ¶¶ 9, 11-13 (Blake lives in Harris County, Texas which is adversely impacts by ozone pollution coming from other states which is an issue required to be addressed by 42 U.S.C. § 7410(a)(2)(D)(i)(I)); Decl. of James Kleissler ¶¶8-14 (same for Allegheny County, PA).

### 2.      Procedural Harm

Standing for challenges of the failure of government officials to engage in required procedural actions enjoy a lesser requirement of traceability and redressability.  As the Supreme Court has explained, "[t]he person who has been accorded a procedural right to protect a concrete interest can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992).  This decision has been repeatedly applied in this Circuit.  *See, e.g, Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir. 2001); *Oregon Natural Desert Ass'n v. Dombeck*, 172 F.3d 1092, 1094 (9th Cir. 1998); *Douglas County v. Babbitt*, 48 F.3d 1495, 1501 (9th Cir. 1995), *cert. denied*, 516

U.S. 1042 (1996).  Therefore, the fact that Plaintiffs request the Court order EPA to engage in procedures, the outcome of which is not certain, does not undercut the immediacy or redressability of the injuries explained above.

Furthermore, Defendant has "failed to comply with a statutory provision" (42 U.S.C. § 7410(k)(1)(B)) requiring the EPA Administrator to "determine whether the minimum criteria [of a state implementation plan submission] have been met."  A finding of failure to submit triggers an obligation for EPA to promulgate a Federal Implementation Plan ("FIP") if the state does not submit and EPA does not approve a SIP within two years.  42 U.S.C. § 7410(c)(1).  The other two claims are that EPA failed to promulgate PSD regulations for the 2008 ozone NAAQS and failed to take final action on the 2008 ozone Infrastructure SIP submittals for Kentucky and Tennessee.  EPA's violation of these three mandatory duties is denying Sierra Club, itself as an organization, as well as its members, the opportunity to participate in these rulemaking processes.  *See e.g.* Decl. of Neil Carman ¶¶ 2 – 7.

### 3.    Informational harm

Sierra Club also is denied information which would be useful for its work by EPA's illegal delays.  *See* Decl. of Neil Carman ¶¶ 3-4, 6.  Denial of information is an injury sufficient to establish standing.  *Center for Biological Diversity v. Abraham*, 218 F.Supp.2d 1143, 1161 (N.D. Cal. 2002).

### 4.    Standing for one is standing for all

The Supreme Court has repeatedly held that if one party has standing, other parties may remain in the litigation without an inquiry into their standing.  *See, e.g., Clinton v. City of New York*, 524 U.S. 417, 431 n.19 (1998); *U.S. Dept. of Labor v. Triplett*, 494 U.S. 715, 719 (1990); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986); *Watt v. Energy Action Educational Foundation*,

454 U.S. 151, 160 (1981); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264, and n. 9 (1977).  This Circuit has held similarly.  *Board of Natural Resources of State of Wash. v. Brown*, 992 F.2d 937, 942 (9th Cir. 1993).

### 5. WildEarth Guardians and Midwest Environmental Defense Center can also establish standing

Although they are not required to do so because one plaintiff, Sierra Club, has already established standing, plaintiffs WildEarth Guardians and Midwest Environmental Defense Center can also establish standing in this case.  Both organizations have submitted declarations of members that satisfy the standing criteria.  *See* Decl. of Jeremy Nichols at ¶¶ 6-21; Decl. of Alexandra DeLucenay at ¶¶ 2-13; Decl. of James Saul at ¶ 5.

### B. The Act Imposes Mandatory Duties For Each of the Claims In This Case

EPA has failed to perform three separate mandatory duties.  Claim one alleges a violation of the mandatory duty in 42 U.S.C. § 7410(k)(1)(B) to make a finding of failure to submit Infrastructure SIPs for the 2008 ozone NAAQS.  Before explaining why Plaintiffs believe 42 U.S.C. § 7410(k)(1)(B) creates a mandatory duty to make a finding of failure to submit, it is important to note that EPA has already admitted this so it should be an uncontested issue.  EPA stated that it does not contest the Court's jurisdiction in Claim One.  *See* Defendant's Memorandum in Support of Motion to Dismiss Plaintiffs' Second Claim for Relief [Dk# 21-1] at 2, ftnt 1.  In order to have jurisdiction under 42 U.S.C. § 7604(a)(2), which is the cause of action for claim one, there must be a violation of a mandatory duty.  Thus, EPA has already admitted that 42 U.S.C. § 7410(k)(1)(B) creates a mandatory duty.

The first sentence of 42 U.S.C. § 7410(k)(1)(B) reads:

Within 60 days of the Administrator's receipt of a plan or plan revision, but no later than 6 months after the date, if any, by which a State is required to submit the plan or revision,

the Administrator shall determine whether the minimum criteria established pursuant to subparagraph (A) have been met.

42 U.S.C. § 7410(k)(1)(B).  This sentence addresses two situations.  The first, not relevant to claim one, is when a state makes a SIP submittal.  In such situations, EPA must, within 60 days of the submittal, determine whether the minimum criteria for SIP submittals have been met.  This is known as a completeness or administrative completeness determination.

The second clause of the sentence can only have meaning if a duty exists in the absence of a state submission.  This clause provides, based on its plain language, that if, six months after the deadline for submission, there has been no submission, then EPA still has a mandatory duty to determine whether the minimum criteria have been met.  Of course, the minimum criteria cannot have been met if the state submitted nothing.  Therefore, if a state fails to submit a SIP submittal by its due date, EPA has a mandatory duty to make a "finding of failure to submit" for that submittal.

Congress' use of the term "shall" in 42 U.S.C. § 7410(k)(1)(B) makes it clear that this is a mandatory duty.  *Brower v. Evans*, 257 F.3d 1058, 1068 fn. 10 (9th Cir. 2001) ("" 'Shall' means shall." *Center for Biological Diversity v. Norton*, 254 F.3d 833, 837-38 (9th Cir.2001) (quoting *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187-88 (10th Cir.1999)); *see also United States v. Monsanto*, 491 U.S. 600, 607 (1989) (by using "shall" "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory").")

Thus, EPA has a mandatory duty to determine that the minimum criteria have not been met.  This is referred to as a "finding of failure to submit" but technically, pursuant to the plain language of the statute, it is a determination that states have not made a submittal that meets the minimum criteria required for that submittal.  *See generally Natural Resources Defense Council,*

1    *Inc. v. EPA*, 22 F.3d 1125, 1131 (D.C. Cir. 1994) ("Initially, section 110(k)(1)(B) *requires* the

2    EPA to make a finding that the submittal is complete or incomplete within 2 months of

3    submission or 6 months of the submission deadline.") (emphasis added).

4        Claim two alleges a violation of EPA's mandatory duty in the second sentence of 42

5    U.S.C. § 7476(a) to promulgate prevention of significant deterioration regulations for the 2008

6    ozone NAAQS.  The Court has already heard the parties' arguments on whether or not this

7    creates a mandatory duty in the context of EPA's motion to dismiss.  Plaintiffs will not repeat

8    those arguments here.

9        Claim three alleges violation of EPA's mandatory duty in 42 U.S.C. § 7410(k)(2) and (3)

10   to approve or disapprove, in whole or part, SIP submissions within 12 months of being deemed

11   complete.  The statute provides:

12       (2) **Deadline for action**
         Within 12 months of a determination by the Administrator (or a determination

13       deemed by operation of law) under paragraph (1) that a State has submitted a plan
         or plan revision (or, in the Administrator's discretion, part thereof) that meets the

14       minimum criteria established pursuant to paragraph (1), if applicable (or, if those
         criteria are not applicable, within 12 months of submission of the plan or

15       revision), the Administrator shall act on the submission in accordance with
         paragraph (3).

16
         (3) **Full and partial approval and disapproval**

17       In the case of any submittal on which the Administrator is required to act under
         paragraph (2), the Administrator shall approve such submittal as a whole if it

18       meets all of the applicable requirements of this chapter. If a portion of the plan
         revision meets all the applicable requirements of this chapter, the Administrator

19       may approve the plan revision in part and disapprove the plan revision in part.
         The plan revision shall not be treated as meeting the requirements of this chapter

20       until the Administrator approves the entire plan revision as complying with the
         applicable requirements of this chapter.

21

22

23

28

42 U.S.C. § 7410(k)(2) – (3).  Thus, the plain language establishes that EPA must approve or disapprove a SIP submittal within 12 months of when it is determined to be complete.  As explained above, Congress' use of the word "shall" makes clear that this is a mandatory duty.

**C.  Plaintiffs are entitled to summary judgment as to EPA's failure to make findings of failure to submit 2008 ozone NAAQS Infrastructure SIPs**

**1.  EPA is liable for failing to make findings of failure to submit 2008 Ozone Infrastructure SIPs**

Plaintiffs are entitled to summary judgment as to their first claim because defendants have missed a statutory deadline.  As discussed above, 42 U.S.C. § 7410(k)(1)(B) establishes a deadline for EPA to make findings of failure to submit of six months after any SIP submission due date.  EPA promulgated the 2008 ozone NAAQS on March 12, 2008.  *See* 73 Fed. Reg. 16,436-16,514 (March 27, 2008).  Thus, the Clean Air Act sets a submission deadline for Infrastructure SIPs for the 2008 ozone NAAQS on March 12, 2011.  42 U.S.C. § 7410(a)(1). Outside the context of this litigation, EPA acknowledges that the deadline for states to submit their 2008 ozone NAAQS Infrastructure SIPs is March 12, 2011.  *See* 73 Fed. Reg. 16436, 16,503 (March 27, 2008).  *See also* Fact 2.  Six months after March 12, 2011 is September 12, 2011; a date already passed.  Yet 40 States have wholly failed to submit their 2008 ozone NAAQS Infrastructure SIP and two States have failed to submit certain elements of their 2008 ozone NAAQS Infrastructure SIPs.  Facts 3-46.  EPA has not made findings of failure to submit pursuant to 42 U.S.C. §7410(k)(1)(B) for these 42 states.  Fact 47.  Therefore, EPA is in violation of its mandatory duty under 42 U.S.C. §7410(k)(1)(B) to make findings of failure to submit for these 42 states with regard to the 2008 ozone NAAQS Infrastructure SIP.  Thus, Plaintiffs are entitled to summary judgment on claim one.

**2.      The Court should require EPA to make the findings of failure to submit within 30 days of issuance of the Court's order**

As to remedy, the Court should order that EPA sign a final rule containing a finding of failure to submit 2008 ozone Infrastructure SIPs for the 42 states within 30 days of the Court's order and requiring EPA to forward that final rule of the Office of the Federal Register within three working days of signature.  This would mean that EPA would have illegally delayed the critical finding by approximately a year by the time EPA issues the finding.  This remedy is appropriate because of, as detailed below, (1) the serious public health impacts caused by EPA's illegal delay; (2) the relative simplicity of the task as documented by Plaintiffs' expert and Plaintiffs preparation of a sample finding; and (3) EPA's abysmal record of delay in implementing the Clean Air Act that makes any assertions by EPA about the appropriate timing of the finding completely suspect.

In addition, we note that Plaintiffs are not the only ones that want EPA to promptly make this finding of failure to submit.  For example, the Director of the State of Maryland's Air and Radiation Management Administration recently wrote EPA urging EPA to promptly "issue findings of failure to submit for overdue [2008 ozone] infrastructure SIPs[.]"  Fact 48.

**a.      There are serious public health and welfare impacts caused by EPA's illegal delay in making a finding of failure to submit**

As explained above, EPA acknowledges that exposure to ozone pollution can kill innocent people as well as cause expensive emergency department visits and hospital admissions.  73 Fed. Reg. at 16,436.  Exposure to ozone also exacerbates asthma, pneumonia, and bronchitis, and can result in the permanent scarring of lung tissue.  Fact 49.  Children are most at risk from ozone pollution, as well as people who exercise or perform manual labor

1   outside, people with pre-existing lung and heart diseases such as asthma, and the elderly.  Fact

2   51.

3        The detrimental effects of ozone pollution extend beyond public health.  Ozone interferes

4   with vegetation's ability to function properly, which results in injuries such as decreased crop

5   yields and damage to native ecosystems.  Fact 52.

6        As a life or death matter, it only makes sense that the remedy should be as expeditious as

7   possible.  Fortunately, as explained below, EPA's task is straightforward and not time

8   consuming.

9           **b.**    **Making the finding is a relatively simple task as demonstrated**

10               **by Plaintiffs' expert and Plaintiffs' preparation of a sample**
               **finding**

11        Issuing findings of failure to submit is a straightforward process that EPA should be able

12   to complete within thirty days.  It is relatively easy to track the status of a state's Infrastructure

13   SIP submittals—anyone can do so on the EPA's own webpage:

14   http://www.epa.gov/air/urbanair/sipstatus/reports/map_i.html.  A search of this webpage for any

15   of the 42 states currently at issue reveals that SIPs were due on March 12, 2011, that there have

16   been no submittals, and that there have been no findings of failure to submit.  *See, e.g.,* EPA,

17   Status of State SIP Infrastructure Requirements—California: 110(a)(2) Ozone (2008)

18   Infrastructure Requirements (available at

19   http://www.epa.gov/air/urbanair/sipstatus/reports/ca_infrabypoll.html#x110_a__2__ozone__200

20   8_).

21        Furthermore, EPA can issue these findings without the need for notice and comment

22   rulemaking.  *See* 5 U.S.C. § 553(b)(B).  EPA has issued findings of failure to submit in the past

23   without notice and comment; it did so three times before with regard to Infrastructure SIPs for

28

1   the 1997 ozone and PM2.5 NAAQS, and that was before the SIP Status webpage streamlined the

2   process.  *See* 70 Fed. Reg. 21,147, 21,148 (Apr. 25, 2005); 73 Fed. Reg. 16,205 (March 27,

3   2008); 73 Fed. Reg. 62,902 (Oct. 22, 2008).

4   The reasonableness of a thirty-day period for EPA action is demonstrated by David

5   Howekamp, whom Plaintiffs retained as an expert on the appropriate remedy for EPA's failure

6   to make a finding of failure to submit 2008 ozone Infrastructure SIPs.  Mr. Howekamp was a

7   career employee at EPA for 31 years.  Declaration of David Howekamp in Support of Plaintiffs'

8   Motion for Summary Judgment (Howekamp Decl.) at ¶2.  For the last 18 of those years, he was

9   the Director of the Air Division for EPA's Region 9 office in San Francisco.  *Id.*  In that position,

10  he managed a budget of over $40 million and directed a staff of 120 scientists, engineers and

11  planners in implementing the Clean Air Act.  *Id.*

12  Mr. Howekamp has extensive experience in establishing and negotiating rulemaking

13  schedules; most of the rulemakings produced by his Division were performed as a result of court

14  orders or settlement agreements.  *Id.* at ¶ 3.  He was personally responsible for preparing Federal

15  Register notices making findings of failure to submit all or portions of SIPs, so he has first-hand

16  knowledge of the technical and policy considerations in such matters and the management

17  demands and resource requirements for producing these notices.  *Id.* at ¶ 4.

18  Mr. Howekamp states that a 30-day timetable for EPA to make the findings of failure to

19  submit the 2008 ozone Infrastructure SIPs is reasonable because (1) EPA has known about

20  Plaintiffs' intent to sue since September 2011, and will have some months more before a court

21  order is issued, (2) findings of failure to submit are routine so there are "well proven template[s]

22  for rapidly creating, signing and publishing the required findings[]," (3) no technical or policy

23  analysis is required but rather a straightforward determination, and (4) preparing the Federal

28

1    Register notice is simplified because the majority of the review requirements of more

2    complicated rulemakings by the agency need not be addressed.  *Id.* at ¶ 6.

3           To further demonstrate how straightforward the task of preparing the finding of failure to

4    submit is, Jeremy Nichols, the Climate and Energy Director for plaintiff WildEarth Guardians,

5    actually drafted a mock version of the finding.  Mr. Nichols was able to draft a finding in two

6    and a half hours.  Affidavit of Jeremy Nichols ¶ 27.  Even if we assume that management review

7    took ten times as long as it took to actually write the document, which would be a truly sad state

8    of affairs, we are still talking about less than a week of staff time for an agency that has a multi-

9    billion dollar budget.  This demonstrates that thirty days is more than adequate time for EPA to

10   prepare the finding.

11                              **c.**      **EPA's abysmal record of delay in implementing the Act**
                                           **makes any assertions by EPA about the appropriate timing of**
12                                         **the finding suspect**

13          EPA's consistent missing of Congressional deadlines demonstrates that any proposed

14   schedule it offers is suspect.  Put simply, when it comes to implementing the Clean Air Act, EPA

15   is in the business of delay. Indeed, in just the past few years in this one judicial district

16   environmental interests have filed many suits seeking to force EPA to meet mandatory, non-

17   discretionary deadlines found in the Clean Air Act.  *See, e.g., WildEarth Guardians v. Jackson*,

18   Case No. 4:11-cv-2205-SI (N.D. Cal. 2011); *Sierra Club v. Jackson*,

19   3:10-cv-4060-CRB (N.D. Cal. 2010); *WildEarth Guardians v. Jackson*, 4:09-cv-2453-CW (N.D.

20   Cal. 2009); *Center for Biological Diversity v. Jackson*, 3:10-cv-1846-MMC (N.D. Cal. 2010);

21   *Communities for a Better Environment v. US EPA*, 3:07-cv-3678-JSW (N.D. Cal. 2007);

22   *Coalition for Clean Air v. Southern California Edison Co.*, 971 F.2d 219, 228 (9th Cir. 1992).

23

28

1      Delay in the implementation of several other ozone rules highlights the need for an

2  expeditious schedule.  EPA still has not fully implemented ozone standards from 1979 and 1997

3  even though EPA has determined that full implementation of these standards is not enough to

4  ensure public health protection because they are not as protective as the 2008 ozone NAAQS.

5  *See, e.g.,* 76 Fed. Reg. 82,133 (Dec. 30, 2011) (finding that three areas in California did not

6  attain the 1979 one-hour ozone standard by their attainment date); 76 Fed. Reg. 80,760 (Dec. 27,

7  2011) (finalizing federal implementation plans for five states for the 42 U.S.C. §

8  7410(a)(2)(D)(i) element of the Infrastructure SIPs for the 1997 ozone NAAQS).  Additionally,

9  the D.C. Circuit Court recently stayed another ozone rule, the Transport Rule, which addresses

10 the 42 U.S.C. § 7410(a)(2)(D)(i) element of the 1997 ozone NAAQS Infrastructure SIPs.  Fact

11 68.  This history of delay–which is still currently denying millions of people needed protection

12 for ozone pollution—means that timely implementation of the 2008 ozone NAAQS is even more

13 important.

14      The Court should reject any arguments by EPA that Plaintiffs' proposed deadlines are

15 impossible to meet. The United States District Court for the District of Arizona was

16 confronted with a similar assertion from EPA in a suit to compel the agency to review the

17 NAAQS for Particulate Matter (PM). The analysis that court utilized applies equally to this case:

18      In such circumstances, the agency carries a heavy burden to show that
        compliance with statutory mandated deadlines is impossible or infeasible.
19      Excuses for delay must go beyond the general proposition that further study
        and analysis of materials will make final agency action better, because further
20      study will always make everything better, and it is always easier to do
        something with more rather than less time.

21 *American Lung Ass'n v. Browner*, 884 F. Supp. 345, 347 (D.Ariz. 1994) (internal citations

22 omitted); *see also Sierra Club v. Thomas,* 658 F. Supp. 165, 172 (N.D. Cal. 1987) (the burden on

23

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT P a g e | 18
4:11-cv-5651-YGR consolidated with 4:11-cv-5694-YGR

28

1  the agency to show impossibility "is especially heavy where the agency has failed to demonstrate

2  any diligence whatsoever in discharging its statutory duty…and has in fact ignored that duty for

3  several years."); *Alabama Power Co. v. Costle*, 636 F.2d 323, 359 (D.C. Cir. 1979) ("The

4  agency's burden of justification in such a case is especially heavy."). In justifying its decision to

5  order a shorter timeline than that proposed by EPA for the review process, the court pointed out

6  that by allowing the NAAQS review deadline to lapse, "the EPA has not merely missed a

7  deadline, it has nullified the congressional scheme for a fixed interval review and revision

8  process." *American Lung Ass'n v. Browner*, 884 F. Supp. at 348.  Notably, although EPA

9  contended that it simply could not perform the review for particulate matter in less than 4

10  years and 3 months, *Id.* at 346-347, the agency was nonetheless able to complete this PM

11  NAAQS review in less than three years. *See* 62 Fed. Reg. 38,652 (July 18, 1997)

12  (finalizing the revised NAAQS for PM). Moreover, the product of this PM NAAQS review

13  process survived legal challenges raised by both business and environmental groups,

14  demonstrating that three years is ample time for EPA to select defensible air quality

15  standards.  *See American Trucking Assns. v. EPA*, 283 F.3d 355, 358 (D.C. Cir. 2002), *rev'd*

16  *in part on other grounds, aff'd in part sub nom. Whitman v. American Trucking Associations*,

17  531 U.S. 457 (2001).  Therefore, the Court should order EPA to sign a final rule regarding

18  findings of failure to submit for the 42 states in question within 30 days of the Court's order and

19  requiring EPA to forward the signed rule to the Office of the Federal Register within two

20  business days of signature.

21

22

23

28

**D.** **Plaintiffs are entitled to summary judgment as to EPA's failure to promulgate Prevention of Significant Deterioration regulations**

**1.** **EPA is liable for failing to promulgate Prevention of Significant Deterioration regulations for the 2008Ozone NAAQS**

Plaintiffs are entitled to summary judgment as to EPA's failure to promulgate prevention of significant deterioration regulations for the 2008 ozone NAAQS.  As explained above, Plaintiffs have already briefed and argued why 42 U.S.C. § 7476(a) (second sentence) creates a mandatory duty and will not repeat it here.  Likewise, Plaintiffs have already demonstrated above that it has been more than two years since EPA promulgated the 2008 ozone NAAQS. Since EPA has not promulgated prevention of significant deterioration regulations for the 2008 ozone NAAQS, EPA is liable for its failure to comply with its mandatory duty in 42 U.S.C. § 7476(a).  Therefore, Plaintiffs are entitled to summary judgment on their second claim.

**2.** **The Court should require EPA to issue a proposed Prevention of Significant Deterioration rule within eight months and a final rule within a year**

As to remedy, the Court should require EPA to sign a proposed prevention of significant deterioration rule for the 2008 ozone NAAQS within eight months of the Court's order.  As this rulemaking will involve more technical analysis than the finding of failure to submit, Plaintiffs believe that EPA will need more than 30 days.  In addition, this rule making would involve notice and an opportunity for public comment.  However, EPA is not starting from scratch on this.  EPA already has some prevention of significant deterioration rules for ozone.  *See e.g.* 40 CFR 52.21(b)(23)(i) (setting the PSD significant emission rate for ozone at 40 tons per year of volatile organic compounds or nitrogen oxides, which are ozone precursor chemicals).   In addition, EPA has already started on the process of evaluating models to design for use in

1   determining whether major sources cause or contribute to a violation of the ozone NAAQS.  *See*

2   Shelley Decl. Ex. 8; 77 Fed. Reg. 4,808 (Jan. 31, 2012)(EPA held 10th modeling conference on

3   March 13 – 15, 2012).  EPA simply needs to determine if these rules need to be adjusted based

4   on the 2008 ozone NAAQS of 75 parts per billion.  Eight months from the Court's order–

5   approximately <u>five years</u> after EPA signed the 2008 ozone NAAQS rule and three years after the

6   Congressionally mandated deadline–would be a reasonable amount of time to conduct this

7   analysis.  An additional four months after the proposed rule would give EPA enough time to

8   have a typical 30-day public comment period and review and respond to those comments.

9    **E.**      **Plaintiffs are entitled to summary judgment as to EPA's failure to take final**
             **action on the Tennessee and Kentucky 2008 ozone Infrastructure SIP**
10            **Submittals**

11              **1.**      **EPA is liable for failing to take final action on the Kentucky and**
                         **Tennessee 2008 Ozone Infrastructure SIP submittals**
12

13       Plaintiffs are entitled to summary judgment as to their third claim because defendants

14   have missed a statutory deadline.  As discussed above, 42 U.S.C. § 7410(k)(2) and (3) establish a

15   deadline for EPA to take final action within twelve months of a state SIP submittal being deemed

16   administratively complete.

17       Kentucky submitted its 2008 ozone NAAQS Infrastructure SIP to EPA on September 8,

18   2009.  Fact 74.  Kentucky's submittal was deemed administratively complete by operation of law

19   on March 8, 2010.  42 U.S.C. § 7410(k)(1)(B).  *See also* Fact 75.  Twelve months after March 8,

20   2010 is March 8, 2011, a date that has already passed.  Yet EPA has failed to take final action on

21   Kentucky's submittal.  Fact 76.

22       Tennessee submitted its 2008 ozone NAAQS Infrastructure state implementation plan to

23   EPA on October 19, 2009.  Fact 77.  Tennessee's submittal was deemed administratively

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT P a g e | **21**
4:11-cv-5651-YGR consolidated with 4:11-cv-5694-YGR

28

1  complete by operation of law on April 19, 2010.  42 U.S.C. § 7410(k)(1)(B).  *See also* Fact 78.

2  Twelve months after April 19, 2010 is April 19, 2011, a date that has already passed.  Yet EPA

3  has failed to take final action on Tennessee's submittal.  Fact 79.

4        Therefore, EPA is in violation of its mandatory duty under 42 U.S.C. §7410(k)(2) and (3)

5  to take final action on Kentucky and Tennessee submittals of the 2008 ozone NAAQS

6  Infrastructure SIP.  Thus, Plaintiffs are entitled to summary judgment on claim three.

7          **2.**      **The Court should require EPA to issue a proposed rule within three months and a final rule within five months on the Kentucky and**

8                 **Tennessee submittals**

9        The Court should issue an order requiring EPA to issue a proposed rule within three

10  months and a final rule within five months to approve or disapprove, in whole or part, the

11  Kentucky and Tennessee 2008 ozone Infrastructure SIP submittals.  For reasons discussed above

12  in part III.C—the severe and widespread harm of ozone pollution and a history of EPA delay—

13  an expeditious schedule is essential.

14        In addition, it is important to keep Kentucky and Tennessee on as consistent a schedule

15  for promulgation of a Federal Implementation Plan (FIP) with other states as possible,

16  considering the problems that EPA has already created by its delay.  By way of explanation,

17  when EPA makes a finding of failure to submit a SIP, that triggers a mandatory duty for EPA to

18  promulgate a FIP that fulfills the SIP's unmet obligations.  42 U.S.C. § 7410(c)(1)(A).  EPA

19  must promulgate this FIP within two years of the finding of failure to submit.  42 U.S.C. §

20  7410(c)(1).  Similarly, when EPA disapproves a SIP submittal, EPA must promulgate a FIP to

21  fulfill the obligations of the disapproved SIP within two years of the disapproval.  42 U.S.C. §

22  7410(c)(1)(B).  It is likely that EPA will use a regional program that applies to multiple states to

23  meet the obligation of the Good Neighbor provisions in 42 U.S.C. § 7410(a)(2)(D)(i)(I) for many

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT P a g e | **22**
4:11-cv-5651-YGR consolidated with 4:11-cv-5694-YGR

28

1    states.  EPA will likely do this through FIPs rather than SIPs.  However, if EPA does not take

2    final action on the Kentucky and Tennessee submittals in approximately the same time frame as

3    EPA issues a finding of failure to submit for other states, then Kentucky and Tennessee's FIP

4    deadlines will not align with other states' FIPs, thus making a regional solution to prevent states

5    from causing ozone problems in downwind states difficult.  Again, Plaintiffs are not the only

6    ones to express the concern that EPA take final action on the Kentucky and Tennessee submittals

7    in a timely manner to allow for a coordinated approach to deal with downwind impacts.

8    Maryland recently told EPA that it had the same concern.  Fact 80.

9            Unlike a finding of failure to submit, however, final action on a SIP submittal does

10   require EPA to undergo notice and comment rulemaking.  A 30 day-deadline is not possible, but

11   again, EPA is not starting from scratch.  Just last year, EPA finally took final action on the

12   Kentucky Infrastructure SIP for the 1997 ozone NAAQS.  *See* 76 Fed. Reg. 41,088 (July 13,

13   2011).  Just last month, EPA finally took final action on part of the Tennessee Infrastructure SIP

14   for the 1997 ozone NAAQS.  *See* 77 Fed. Reg. 14,976 (Mar. 14, 2012).  EPA, Sierra Club, and

15   WildEarth Guardians have a settlement agreement requiring EPA to take final action on the rest

16   of the Tennessee Infrastructure SIP for the 1997 ozone NAAQS by no later than July 31, 2012.

17   *See Sierra Club v. Jackson*, 3:10-cv-4060-CRB (N.D. Cal), Settlement Agreement  ¶11(b).

18   EPA's review of the Infrastructure SIP for the 1997 ozone NAAQS should address most of the

19   needed elements for the Infrastructure SIP for the 2008 ozone NAAQS, with the critical

20   exception of the Good Neighbor provisions in 42 U.S.C. § 7410(a)(2)(D)(i).  For example, 42

21   U.S.C. § 7410(a)(2)(E)(ii) requires that Infrastructure SIPs include certain conflict of interest

22   provisions for air pollution control board members.  EPA's analysis of this for the 1997 ozone

23   NAAQS Infrastructure SIP should be the same as for the 2008 ozone NAAQS.

28

1    As for the critical Good Neighbor provisions, EPA's analysis of the Kentucky and

2    Tennessee submittals is not complicated because Kentucky and Tennessee's submittals are

3    obviously flawed and thus must be disapproved.  For example, Kentucky's submittal only

4    addresses emission limits designed to deal with the 1997 ozone NAAQS.  Fact 84.  Tennessee's

5    submittal suffers from the same defect, although it also discusses Tennessee's permitting

6    programs, which are covered under 42 U.S.C. § 7410(a)(2)(C), not 42 U.S.C. §

7    7410(a)(2)(D)(i)(I).  Facts 85-86.  Tennessee goes on to say that if EPA adopts new guidance on

8    how to implement the 2008 ozone NAAQS Good Neighbor provisions, then Tennessee will

9    adopt the SIP revisions required by EPA's guidance.  Fact 87.  A promise of future unspecified

10   action is not an approvable SIP provision.  *See* 42 U.S.C. § 7410(k)(4) (emphasis added) (EPA

11   can grant conditional approval if there is a commitment to "adopt <u>specific</u> enforceable measures

12   by a date certain, <u>but not later than 1 year after the date of approval</u>").

13   Therefore, in light of the significant health and welfare issues, the need for consistency

14   between all the states, and the limited extent of the task, a five-month deadline is reasonable.

15   **IV.    CONCLUSION**

16   For the reasons explained above, Plaintiffs respectfully request that the Court grant

17   summary judgment as to Plaintiffs' first, second, and third claims for relief and order EPA to (1)

18   issue findings of failure to submit for 42 states' infrastructure state implementation plans for the

19   2008 ozone NAAQS in accordance with 42 U.S.C. § 7410(k)(1)(B) and within thirty days, (2)

20   promulgate final Prevention of Significant Deterioration regulations for the 2008 ozone NAAQS

21   within a year, and (3) take final action on Kentucky and Tennessee submittals in accordance with

22   42 U.S.C. § 7410(k)(2) and (3) within five months.

23

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT P a g e | **24**
4:11-cv-5651-YGR consolidated with 4:11-cv-5694-YGR

28

1                                           Respectfully submitted,

/s Robert Ukeiley

_____
ROBERT UKEILEY (Admitted *Pro Hac Vice*)
Law Office of Robert Ukeiley
435R Chestnut Street, Suite 1
Berea, KY 40403
Telephone: (859) 986-5402
Facsimile:  (866) 618-1017
rukeiley@igc.org

KRISTIN HENRY (Cal. Bar No. 220908)
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
Telephone: (415) 977-5716
Kristin.Henry@sierraclub.org

Counsel for Plaintiffs Midwest Environmental Defense Center and Sierra Club

/s James Jay Tutchton

_____
JAMES JAY TUTCHTON
(CA Bar No. 150908)
WildEarth Guardians
6439 E. Maplewood Ave.
Centennial, CO 80111
Telephone: (720) 301-3843
Email: jtutchton@wildearthguardians.org

*Attorney for Plaintiff WildEarth Guardians*

Dated: April 13, 2012