1  IGNACIA S. MORENO
   Assistant Attorney General
2  Environment & Natural Resources Division

3  CHRISTINA RICHMOND (Washington Bar No. 39731)
4  Trial Attorney
   U.S. Department of Justice
5  Environment & Natural Resources Division
   Environmental Defense Section
6  P.O. Box 7611
   Washington, D.C. 20044
7  Tel:    (202) 514-3376
   Fax:    (202) 514-8865
8  Email: christina.richmond2@usdoj.gov

9

10 *Counsel for Defendants*

11              **UNITED STATES DISTRICT COURT**
12              **NORTHERN DISTRICT OF CALIFORNIA**

13

   WILDEARTH GUARDIANS,                    Civil Action No. 11-CV-5651-YGR
14
                                           And consolidated case No. 3:11-CV-
          Plaintiff,                       05694-YGR
15

16        v.                               **DEFENDANT'S NOTICE AND**
                                           **CROSS-MOTION FOR SUMMARY**
17 LISA P. JACKSON, in her official        **JUDGMENT; OPPOSITION TO**
   capacity as Administrator of the United **PLAINTIFFS' MOTION FOR**
18 States Environmental Protection Agency, **SUMMARY JUDGMENT;**
                                           **MEMORANDUM IN SUPPORT**
19        Defendant.                       **THEREOF**

20

21                                         Hearing:  July 3, 2012
                                           Time:     2:00 p.m.
22                                         Judge:    Hon. Yvonne Gonzales Rogers

23                     **NOTICE OF MOTION**

24        Please take notice that on July 3, 2012 at 2:00 p.m. or as soon thereafter as counsel

25 can be heard, Defendant Lisa P. Jackson, in her official capacity as Administrator of the

26 United States Environmental Protection Agency ("EPA") will move this Court, located in the

27 United States Court House located at 1301 Clay Street, Oakland, California, for summary
28

---

judgment on the claims of Plaintiffs WildEarth Guardians, Midwest Environmental Defense Center, and Sierra Club (collectively, "Plaintiffs") against EPA.

**RELIEF REQUESTED**

The relief EPA seeks is:

(1)     an order entering summary judgment in favor of EPA on Plaintiffs' claim that EPA has failed to issue a finding of failure to submit an "infrastructure" state implementation plan ("SIP") for the 2008 ozone national ambient air quality standards ("NAAQS") for the states of Delaware, Idaho, Indiana, Oregon, and West Virginia (for CAA sections 110(a)(2)(A)-(C),(D)(i)(II), (D)(ii), (E)-(H), and (K)-(M) only); and dismissing those claims pursuant to Fed. R. Civ. P. 56.

(2)     an order directing EPA to:

> a.  By no later than January 4, 2013 sign a notice finding that the following States have failed to submit "infrastructure" SIPs for the 2008 ozone NAAQS:  Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Hawaii, Illinois, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia (for CAA section 110(a)(2)(D)(i)(I) only), Wisconsin, and Wyoming;

> b.  By no later than January 4, 2013, sign for publication in the Federal Register a notice of the Agency's final action pursuant to section 110(k) of the Clean Air Act, 42 U.S.C. § 7410(k), approving, disapproving, or

approving in part and disapproving in part (a) the infrastructure SIP submittal submitted by Kentucky dated September 8, 2009 addressing the 2008 ozone NAAQS and (b) the infrastructure SIP submittal submitted by Tennessee dated October 19, 2009 addressing the 2008 ozone NAAQS.

EPA further requests that any order issued for purposes of the requirements of paragraphs (2)(a) and (b) above include the following clarification: "It is understood that an infrastructure SIP does not include that portion of section 110(a)(2)(C), 42 U.S.C. § 7410(a)(2)(C), that pertains to nonattainment area plan requirements under part D. It is further understood that in the event that a state makes a complete infrastructure SIP submission meeting the requirements of section 110(a)(2), as applicable, in whole or in part, then EPA no longer has the legal authority or the obligation pursuant to section 110(k)(1)(B), 42 U.S.C. § 7410(k)(1)(B), to make a finding of failure to submit with respect to that state and to those elements of the infrastructure SIP submission for which the state made such submission. In addition, it is understood that if a state withdraws, in whole or in part, a submitted infrastructure SIP, then EPA no longer has the legal authority or the obligation pursuant to section 110(k), 42 U.S.C. § 7410(k) to take action on such SIP."

TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 3

I.      STATUTORY AND REGULATORY BACKGROUND ......................................... 3

        A.      The Clean Air Act's "Infrastructure" State Implementation Plans ................ 3

        B.      EPA Review of State Implementation Plan Submissions …........................ 4

II.     FACTUAL BACKGROUND .................................................................. 5

STANDARD OF REVIEW ..................................................................................... 6

ARGUMENT ..................................................................................................... 6

I.      EPA IS NOT LIABLE ON CLAIM 1 FOR THE DELAWARE,
        IDAHO, INDIANA, AND OREGON INFRASTRUCTURE SIP
        SUBMITTALS OR ON PORTIONS OF THE WEST VIRGINIA
        INFRASTRUCTURE SIP SUBMITTAL ................................................. 8

II.     THE COURT SHOULD ADOPT THE SCHEDULE PROPOSED
        BY EPA ....................................................................................... 9

        A.      EPA'S PROPOSED SCHEDULE IS AS EXPEDITIOUS
                AS POSSIBLE IN LIGHT OF THE AGENCY'S OTHER
                MANDATORY OBLIGATIONS .............................................. 10

                1.      Time Needed for EPA to Issue Findings of Failure
                        to Submit ................................................................. 10

                2.      Time Needed for EPA to Take Action on the Kentucky
                        and Tennessee Infrastructure SIPs ............................... 12

                3.      Time Needed for EPA Action In Light of Competing
                        Agency Priorities ...................................................... 14

                        a.      Competing Mandatory Obligations EPA Must
                                Perform ........................................................ 15

                        b.      Efficiencies From Tying Final Action for the
                                Duties in this Suit to a Single Date ..................... 18

        B.      PLAINTIFFS' PROPOSED SCHEDULE WOULD
                JEOPARDIZE EPA'S PERFORMANCE OF OTHER,
                NON-DISCRETIONARY ACTIONS ........................................ 19

CONCLUSION ................................................................................................ 22

DEFENDANT'S NOTICE  AND CROSS-MOTION FOR SUMMARY JUDGMENT; OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF, Civ. Action No. 11-CV-5651-YGR

i

# TABLE OF AUTHORITIES

## CASES

*American Lung Ass'n v. Browner,*
  884 F. Supp. 345 (D.Ariz. 1994) ...............................................................6, 9

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)...............................................................................6

*Matsushita Elec. Indus. Co. v. Zenith*
    *Radio Corp.,*
  475 U.S. 574 (1986)...............................................................................6

*Natural Res. Def. Council v. New York*
    *State Dep't of Envtl. Conservation,*
  700 F. Supp. 173 (S.D.N.Y. 1988)...........................................................20

*Natural Res. Def. Council v. Train,*
  510 F.2d 692 (D.C. Cir. 1975) ...............................................7, 9, 10, 15

*Sierra Club v. Johnson,*
  444 F. Supp. 2d 46 (D.D.C. 2006) ...................................................6, 20

*Weinberger v. Carlos Romero-Barcelo,*
  456 U.S. 305 (1982)...............................................................................9

## RULES

Fed. R. Civ. P. 56..................................................................................1

Fed. R. Civ. P. 56(a) ...........................................................................6

## STATUTES

42 U.S.C. §§ 7401-7671q ......................................................................3

42 U.S.C. § 7407(a) ..............................................................................4

42 U.S.C. § 7408-09 ..............................................................................4

42 U.S.C. § 7410(a)(1)...........................................................................4

42 U.S.C. § 7410(a)(2)...........................................................................4

42 U.S.C. § 7410(a)(2)(C) .....................................................................3

42 U.S.C. § 7410(a)(2)(D)(i) .......................................................................19, 21

42 U.S.C. § 7410(c) ..............................................................................................5

42 U.S.C. § 7410(c)(1)........................................................................................19

42 U.S.C. § 7410(k) ..................................................................................4, 7, 12

42 U.S.C. § 7410(k)(1)(B), (A)............................................................................5

42 U.S.C. § 7410(k)(2)-(4)....................................................................................5

42 U.S.C. § 7476(a) ..............................................................................................1

42 U.S.C. § 7602(d) ..............................................................................................6

**CODE OF FEDERAL
REGULATIONS**

40 C.F.R. § 50.15 ..................................................................................................5

40 C.F.R. pt. 51 .....................................................................................................5


**FEDERAL REGISTERS**

44 Fed. Reg. 8202 (Feb. 9, 1979) ........................................................................5

73 Fed. Reg. 16,205, 16,207 (Mar. 27,
        2008)............................................................................................................4

73 Fed. Reg. 16,436, 16,503 (Mar. 27,
        2008)............................................................................................................5

73 Fed. Reg. 16,511 (Mar. 27, 2008).................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56 and the Court's May 9, 2012 Order (Dkt. No. 41), Defendant Lisa Jackson, Administrator of the United States Environmental Protection Agency ("EPA" or the "Agency") hereby files this Memorandum in support of (1) EPA's opposition to the two surviving claims in the joint motion for summary judgment filed by Plaintiffs WildEarth Guardians, Midwest Environmental Defense Center, and Sierra Club (collectively, "Plaintiffs") on April 13, 2012 (Dkt. No. 36)[1] and (2) EPA's cross-motion for summary judgment.

In support of the two surviving claims in Plaintiffs' motion for summary judgment, Plaintiffs argue that EPA has failed to carry out two non-discretionary duties mandated by the Clean Air Act ("CAA" or the "Act").  First, Plaintiffs allege that EPA failed to perform a non-discretionary duty by not issuing a "finding of failure to submit" for 44 states that have not submitted an "infrastructure" state implementation plan ("SIP") for the 2008 ozone national ambient air quality standards ("NAAQS").  *See* Claim One, Second Amd. Compl. at ¶¶ 21-32 (Dkt. No. 30, Mar. 6, 2012); Plfs. Mem. in Support of Mot. for Summ. J. (hereinafter "Plfs. Mem.") at 13-19 (Dkt. No. 36, Apr. 13, 2012).  Second, Plaintiffs allege that EPA failed to take final action on the 2008 ozone NAAQS infrastructure SIPs submitted by Kentucky and Tennessee as required by 42 U.S.C. § 7410(k)(2) and (3).  *See* Claim Three, Second Amd. Compl. at ¶¶ 38-47 (Dkt. No. 30, Mar. 6, 2012); Plfs. Mem. at 21-24 (Dkt. No. 36, Apr. 13, 2012).  Plaintiffs ask the Court to impose a schedule on the Agency requiring

---

[1]   On May 7, 2012, the Court granted EPA's motion to dismiss Plaintiffs' claims that EPA had failed to promulgate regulations concerning prevention of significant deterioration with respect to revised ozone air quality standards.  *See* Order (Dkt. No. 40).  The Court found that section 166(a) of the CAA, 42 U.S.C. § 7476(a), does not impose a non-discretionary duty to EPA to promulgate revised PSD regulations for ozone, and accordingly that the Court lacked subject matter jurisdiction over the claim.

DEFENDANT'S NOTICE  AND CROSS-MOTION FOR SUMMARY JUDGMENT; OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF, Civ. Action No. 11-CV-5651-YGR

1

1   EPA to issue the findings of failure to submit within 30 days and to take final action on the

2   Kentucky and Tennessee SIP submittals within 5 months.  Plfs. Mem. at 24 (Dkt. No. 36,

3   Apr. 13, 2012); Plfs. Proposed Order (Dkt. No. 37-8, Apr. 13, 2012).

4           EPA does not contest liability on these two claims, except as to the SIP submittals

5   from five of the 44 states that Plaintiffs allege in Claim One have not submitted an

6   infrastructure SIP for the 2008 ozone NAAQS.  Delaware, Idaho, Indiana, Oregon, and West

7   Virginia have in fact submitted the contested SIPs or portions of the contested SIPs, and

8   consequently EPA can have no duty to issue a finding of failure to submit.  EPA Facts 1-5.[2]

9   Thus, EPA moves for summary judgment in EPA's favor regarding the 2008 ozone NAAQS

10  infrastructure SIP submissions from those five states.  Otherwise, EPA does not dispute that

11  it has not issued findings of failure to submit for submissions from the remaining 40 states

12  that Plaintiffs allege have not submitted an infrastructure SIP for the 2008 ozone NAAQS

13  (hereinafter "the 40 states"), nor that the Agency has missed the statutory deadline to take

14  final action on the 2008 ozone NAAQS infrastructure SIPs submitted to EPA by Kentucky

15  on September 8, 2009 and by Tennessee on October 19, 2009 (hereinafter, the "Kentucky

16  infrastructure SIP" and "Tennessee infrastructure SIP").[3]  Therefore, only issue to be

17  resolved on summary judgment on those claims is remedy, i.e., what schedule the Court

18  should impose on EPA to issue the findings of failure to submit and to take final action on

---

[2]  West Virginia has submitted portions of the contested SIP.  EPA Fact 5.  Therefore, EPA moves for summary judgment as to those portions of the SIP that West Virginia has submitted, and does not contest liability as to those portions of the SIP that West Virginia has not submitted.

[3]  The states for which EPA does not contest Plaintiffs' allegations that EPA has not issued a finding of failure to submit an infrastructure SIP addressing the 2008 ozone NAAQS are: Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Hawaii, Illinois, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia (for CAA section 110(a)(2)(D)(i)(I) only), Wisconsin, and Wyoming.  For ease of reference, EPA refers to the states in this list as "the 40 states."

the Kentucky and Tennessee infrastructure SIPs.  Plaintiffs ask this Court (1) to direct EPA to issue findings of failure to submit within 30 days of the issuance of the Court's order and (2) to propose action on the Kentucky and Tennessee infrastructure SIPs within 3 months and to take final action within 5 months of the issuance of the Court's Order.  However, in light of budgetary and resource constraints and the numerous other statutorily required mandatory duties EPA must undertake in the coming months, the most expeditious schedule by which EPA could issue the findings of failure to submit and take final action on the Kentucky and Tennessee infrastructure SIPs is January 4, 2013.

EPA respectfully requests that the Court grant summary judgment in EPA's favor with regard to Plaintiffs' claim that EPA has failed to issue a finding of failure to submit for the 2008 ozone NAAQS infrastructure SIPs for Delaware, Idaho, Indiana, Oregon, and portions of the West Virginia SIP submission.  EPA further requests that the Court resolve the remainder of this case by issuing an order that EPA satisfy its non-discretionary duties under the CAA by: (1) signing on or before January 4, 2013, findings of failure to submit for any of the 40 remaining states at issue in this case that have not by that date submitted 2008 ozone NAAQS infrastructure SIPs to EPA; and (2) signing on or before January 4, 2013, a final rule taking action on the 2008 ozone NAAQS infrastructure SIPs submitted by Kentucky and Tennessee to EPA.

## BACKGROUND

## I.    STATUTORY AND REGULATORY BACKGROUND

### A.    The Clean Air Act's "Infrastructure" State Implementation Plans

The Clean Air Act, 42 U.S.C. §§ 7401-7671q, establishes a comprehensive program for controlling and improving the nation's air quality through shared Federal and state responsibility.  The Act requires EPA to establish, review, and revise National Ambient Air

Quality Standards ("NAAQS") for air pollutants that it determines may reasonably be anticipated to endanger public health or welfare.  42 U.S.C. §§ 7408-7409.  States have primary authority for ensuring that their air quality meets the NAAQS.  42 U.S.C. § 7407(a).  The Act requires the States to develop state implementation plans ("SIPs") that provide for the implementation, maintenance and enforcement of the NAAQS in each air quality control region within the State.  *Id*. § 7410(a)(1) & (a)(2).  These SIPs are referred to as "infrastructure" SIPs because they are intended to address basic structural requirements for SIPs for a new or revised NAAQS.  The States must submit such SIPs within no more than three years after promulgation or revision of a NAAQS.  *Id*. § 7410(a)(1).

Section 110(a)(2) lists specific elements that states must meet, as applicable, in the general infrastructure SIP submissions.  42 U.S.C. § 7410(a)(2).  The requirements include basic SIP infrastructure elements such as provisions to provide for monitoring, enforcement, and general legal authority, which are designed to assure attainment and maintenance of the NAAQS.  EPA interprets the Act such that two elements identified in section 110(a)(2) are not governed by the three-year submission deadline of section 110(a)(1) because they are related to the Act's nonattainment provisions, which have different due dates for submission.  These two elements are: (1) section 110(a)(2)(C) to the extent it refers to nonattainment new source review permit programs that are required under part D, Title I of the CAA; and (2) section 110(a)(2)(I), which pertains to the nonattainment planning requirements of part D, Title I of the CAA.  *See* 73 Fed. Reg. 16,205, 16,207 (Mar. 27, 2008).[4]

**B.      EPA Review of State Implementation Plan Submissions**

Section 110(k) of the CAA sets forth the process by which EPA must review SIP submissions or revisions.  42 U.S.C. § 7410(k).  Pursuant to section 110(k)(1)(B), within 60

---

[4]  Plaintiffs note that for purposes of their summary judgment motion, they do not dispute EPA's position regarding these two provisions.  *See* Plfs. Mem. at 4.

days of EPA's receipt of a SIP submission, EPA must determine whether the SIP submission meets the completeness criteria promulgated by the Agency in 40 C.F.R. part 51 under section 110(k)(1)(A) of the Act. 42 U.S.C. § 7410(k)(1)(B), (A). If EPA does not determine that the submission is incomplete within six months of receipt, the SIP submission is deemed complete by operation of law. *Id.* § 7410(k)(1)(B). If EPA determines that the SIP submission is complete, or if the SIP submission is deemed complete by operation of law, EPA must act to approve, disapprove, or approve in part and disapprove in part, the SIP submission within 12 months of the completeness determination. *Id.* § 7410(k)(2)-(4). If a State fails to submit a SIP required by the CAA, EPA must promulgate a federal implementation plan ("FIP") within two years of making the finding that the state failed to submit. *Id.* § 7410(c).

## II.   FACTUAL BACKGROUND

EPA established a NAAQS for ozone in 1979, 44 Fed. Reg. 8202 (Feb. 9, 1979), and subsequently has periodically reviewed and revised the ozone NAAQS. As a result of the most recent review, EPA issued a revised ozone NAAQS on March 12, 2008. 73 Fed. Reg. 16,511 (Mar. 27, 2008) (codified at 40 C.F.R. § 50.15). The deadline for States to submit infrastructure SIPs to EPA for the 2008 ozone NAAQS was March 12, 2011 (three years after the date of promulgation of the 2008 NAAQS). 73 Fed. Reg. 16,436, 16,503 (Mar. 27, 2008). As of May 29, 2012, Delaware, Idaho, Indiana, Kentucky, Tennessee, Oregon, and West Virginia had submitted to EPA infrastructure SIPs (or portions of those SIPs in West Virginia's case) for the 2008 ozone NAAQS. EPA Facts 1-5; EPA Response to Plfs. Statement of Facts ("EPA Response to Plfs. SOF") 74, 77.[5]

---

[5]  States in addition to Delaware, Idaho, Indiana, Kentucky, Tennessee, Oregon, and West Virginia have submitted infrastructure SIPs intended to address the 2008 ozone NAAQS to EPA, but Plaintiffs have not asserted claims against EPA regarding those states. *See* Second Amd.

**STANDARD OF REVIEW**

Summary judgment is to be granted if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial responsibility, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Summary judgment is appropriate where liability is uncontested and the only issue for the Court to address is to fashion an equitable remedy. *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 52 (D.D.C. 2006); *American Lung Ass'n v. Browner*, 884 F. Supp. 345, 346 (D. Ariz. 1994).

**ARGUMENT**

Plaintiffs' motion for summary judgment seeks summary judgment on three claims: (1) the claim that EPA has failed to issue findings of failure to submit infrastructure SIPs for the 2008 NAAQS from 44 states[6]; (2) the claim that EPA has failed to complete a rulemaking process to update the Prevention of Significant Deterioration ("PSD") regulations for the 2008 ozone NAAQS; and (3) the claim that EPA has failed to take action on the specific 2008 ozone NAAQS infrastructure SIP submittals by Kentucky and Tennessee. Plfs.

---

Compl. ¶¶ 29, 32 (excluding Mississippi, South Carolina, Florida, Alabama, and Alaska from Plaintiffs' Claim One regarding the findings of failure to submit).

[6] Although Plaintiffs' motion for summary judgment refers to "42 states," *see* Plfs. Mem. at 2 n.2 & 13, the list includes 44 states. EPA notes that the CAA defines "State" to include the District of Columbia and the Commonwealth of Puerto Rico, both of which are included in Plaintiffs' list of 44 states. *See* 42 U.S.C. § 7602(d); Plfs. Mem. at 2 n.2.

Mem. at 2.  Because the Court granted EPA's motion to dismiss the second of the claims

(regarding PSD regulations, *see* Order Granting Def.'s Mot. to Dismiss (Dkt. No. 40, May 7,

2012)), EPA now moves for summary judgment and responds to Plaintiffs' motion for

summary judgment with regard only to the first and third claims.

Regarding the first claim, EPA does not contest liability as to 40 of the 44 states on

which Plaintiffs seek summary judgment.[7]  However, among the 44 states the Plaintiffs name

in their Complaint, the states of Delaware, Idaho, Indiana, and Oregon have already

submitted infrastructure SIPs, and West Virginia has submitted portions of such a SIP for the

2008 ozone NAAQS.  EPA Facts 1-5.[8]  With regard to the SIP submissions from these five

states, EPA therefore moves for summary judgment in its favor.  EPA should not be ordered

to issue a finding of failure to submit a SIP as to States that have in fact already submitted the

required SIP.  Regarding the second claim, EPA admits that it has not taken action pursuant

to 42 U.S.C. § 7410(k) on the specific infrastructure SIP submittals for the 2008 ozone

NAAQS at issue in this case submitted by Kentucky on September 8, 2009 (the "Kentucky

Infrastructure SIP") and by Tennessee on October 19, 2009 (the "Tennessee Infrastructure

SIP").  EPA Response to Plfs. SOF 76, 79.  EPA thus has failed to perform a mandatory duty

to take action pursuant to 42 U.S.C. § 7410(k).

The Court may properly enter an order setting deadlines for EPA to perform the

obligations as to which it admits liability within the first and third claims.  *See Natural Res.

Def. Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1975).  Thus, the only dispute

between the parties as to these claims is about the length of time EPA should be given to

perform these obligations.  In exercising its discretion to establish appropriate deadlines, this

---

[7] *See* note 3, *supra*, for the list of the 40 states.

[8] West Virginia is included in both the list of five states and the list of 44 states because it has submitted portions, but not all, of the contested infrastructure SIP.  EPA Fact 5; *see supra*, note 2.

Court should consider the Agency's budgetary and manpower constraints, the importance of not jeopardizing EPA's implementation of other mandatory duties, and the value of EPA's issuing the findings of failure to submit and taking action on the Kentucky and Tennessee SIP submittals at the same time.  EPA respectfully requests that the Court set January 4, 2013 as the deadline for action for both of these claims.

**I.       EPA IS NOT LIABLE ON CLAIM 1 FOR THE DELAWARE, IDAHO, INDIANA, AND OREGON INFRASTRUCTURE SIP SUBMITTALS OR ON PORTIONS OF THE WEST VIRGINIA INFRASTRUCTURE SIP SUBMITTAL**

In their first claim, Plaintiffs allege that 44 states failed to submit infrastructure SIPs addressing the 2008 ozone NAAQS, and that EPA failed to perform a mandatory duty by not issuing findings of failure to submit for these states.  Plfs. Mem. at 2 n.2, 13.  Plaintiffs' list includes Delaware, Idaho, Indiana, Oregon, and West Virginia.  *Id.*  However, these states have now actually submitted the contested SIPs (or portions of those SIPs, in West Virginia's case) and thus Plaintiffs' motion for summary judgment on this issue as to these states should be denied and EPA's motion for summary judgment granted.

On February 1, 2012, Delaware submitted to EPA a SIP submittal intended to meet the infrastructure requirements for the 2008 ozone NAAQS. EPA Fact 1.  On September 15, 2008,  June 25, 2010, and October 25, 2010, Idaho submitted to EPA a SIP submittal intended to meet the infrastructure requirements for the 2008 ozone NAAQS.  EPA Fact 2. On December 12, 2011 and May 24, 2012, Indiana submitted to EPA a SIP submittal intended to meet the infrastructure requirements for the 2008 ozone NAAQS.  EPA Fact 3. On June 23, 2010 and December 19, 2011, Oregon submitted to EPA a SIP submittal intended to meet the infrastructure requirements for the 2008 ozone NAAQS.  EPA Fact 4. On February 17, 2012, West Virginia submitted to EPA a SIP submittal intended to meet the infrastructure requirements addressing CAA sections 110(a)(2)(A)-(C), (D)(i)(II), (D)(ii),

(E)-(H), and (K)-(M) for the 2008 ozone NAAQS.  EPA Fact 5.

Because these five states submitted the 2008 ozone NAAQS infrastructure SIPs or a portion of the required SIPs, EPA does not have a mandatory duty to issue findings of failure to submit regarding the above-referenced submissions from these states.  Thus, the Court should grant summary judgment in EPA's favor with regard to the submissions from these five states.

## II.   THE COURT SHOULD ADOPT THE SCHEDULE PROPOSED BY EPA

Aside from denying Plaintiffs' motion for summary judgment on the claim alleging that EPA failed to perform a mandatory duty to issue findings of failure to submit with regard to the 2008 ozone NAAQS infrastructure SIPs from Delaware, Idaho, Indiana, Oregon, and West Virginia, the only remaining question before this Court is what schedule the Court should impose for EPA:  (1) to issue findings of failure to submit for any of the 40 remaining states at issue in this case that have not by that date submitted 2008 ozone NAAQS infrastructure SIPs to EPA; and (2) to take final action on the Kentucky Infrastructure SIP and the Tennessee Infrastructure SIP.  EPA does not contest liability on these claims.  However, the parties disagree on what deadlines the Court should set for EPA's actions.

A district court has broad discretion to fashion equitable remedies.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 310-13 (1982); *American Lung Ass'n*, 884 F. Supp. at 347.  In a suit alleging violation of a Congressionally mandated duty, courts have recognized two types of circumstances that might make it infeasible for an agency to comply with a particular deadline:  (1) the "budgetary . . . and manpower demands" required are "beyond the agency's capacity or would unduly jeopardize the implementation of other essential programs," and (2) the need for an agency to have more time to sufficiently evaluate complex technical issues.  *Natural Res. Def. Council v. Train*, 510 F.2d at 712-13.  When the agency

DEFENDANT'S NOTICE  AND CROSS-MOTION FOR SUMMARY JUDGMENT; OPPOSITION TO PLAINTIFFS' MOTION FOR SUMARY JUDGMENT; MEMORANDUM IN SUPPORT THEREOF, Civ. Action No. 11-CV-5651-YGR

9

concludes that these types of constraints would require an extension of the deadline, it may attempt to so demonstrate to the district court.  *Id*.  In *Train*, the D.C. Circuit reasoned that a federal court in equity may exercise its discretion to extend a deadline if convinced that the agency in question has "in good faith employed the utmost diligence in discharging [its] statutory responsibilities," since the Court's discretion "does not embrace enforcement through contempt of a party's duty to comply with an order that calls him to do an impossibility."  *Id.*

**A.  EPA'S PROPOSED SCHEDULE IS AS EXPEDITIOUS AS POSSIBLE IN LIGHT OF THE AGENCY'S OTHER MANDATORY OBLIGATIONS**

EPA's Assistant Administrator for the Office of Air and Radiation, Regina McCarthy, explains in detail in her attached Declaration the amount of time EPA requests:  (1) to issue findings of failure to submit, in whole or in part, for the 40 states that have not yet submitted infrastructure SIPs addressing the 2008 ozone NAAQS; and (2) to take action under CAA section 110(k), 42 U.S.C. § 7410(k), on the 2008 ozone NAAQS infrastructure SIPs already submitted by Kentucky and Tennessee.  EPA proposes to take final action on both duties by January 4, 2013.  EPA's proposed schedule reflects the most expeditious timeframe by which Ms. McCarthy, in her informed judgment, believes the Agency can perform these actions in light of its budgetary constraints and other mandatory duties and obligations imposed by the Clean Air Act.

**1.  Time Needed for EPA to Issue Findings of Failure to Submit**

If EPA were to act in a vacuum on the finding as to whether the 40 states have submitted the required SIPs, little time would be necessary.  In other words, if EPA could prioritize, *above other competing mandatory duties and obligations*, issuing findings of failure to submit for States that have not yet submitted infrastructure SIPs addressing the

2008 ozone NAAQS, EPA would need approximately 30 business days to complete the action.  EPA Fact 6.

First, EPA staff must verify whether the states in question have made the specific required SIP submission, which takes about 5 business days.  McCarthy Decl. ¶ 10, Att. A. States make SIP submissions on a rolling basis as they are able, and sometimes withdraw, replace, or make supplemental SIP submissions.  McCarthy Decl. ¶ 7.  Next, EPA staff create a draft findings notice and discuss it with the Agency's workgroup and all the affected EPA Regional Offices.  McCarthy Decl. ¶¶ 11-12.  The draft findings notice lists and describes the SIP submissions for all elements of CAA section 110(a)(2), 42 U.S.C. § 7410(a)(2), applicable to the particular action.  McCarthy Decl. ¶ 11.  Discussion within the workgroup and the affected EPA Regional Offices ensures, among other things, that the information in the draft findings notice is accurate and that EPA is addressing substantive elements of CAA section 110(a)(2) consistently.  McCarthy Decl. ¶¶ 11-12.  EPA staff also must create an electronic draft of the package of materials to be sent to the Office of the Federal Register and, prior to transmitting the package, confirm that the states' most recent SIP submission data are accurate (frequently EPA's preparation to issue a finding of failure to submit results in  a state making a submission).  McCarthy Decl. ¶¶ 13-14.  EPA then must revise the Federal Register Notice as necessary, and route it for review and approval within several offices within EPA: the Office of Air Quality Planning and Standards, the Office of General Counsel to ensure the notice meets legal requirements, the Air Quality Policy Division, and management within the Office of Air Quality Planning and Standards and the Office of Air and Radiation (in EPA Headquarters).  McCarthy Decl. ¶¶ 15-20.  Finally, the notice must be signed by the Assistant Administrator for the Office of Air and Radiation. McCarthy Decl. ¶ 21.  In total, EPA estimates that this process takes 30 business days.  EPA

Fact 6.  Assuming a conversion of 20 business days per month, this estimate translates into 1.5 months.

### 2.     Time Needed for EPA to Take Action on the Kentucky and Tennessee Infrastructure SIPs

In her Declaration, Ms. McCarthy also describes the amount of time EPA needs in order to take action pursuant to CAA section 110(k), 42 U.S.C. § 7410(k), on the Kentucky Infrastructure SIP and the Tennessee Infrastructure SIP submissions made by those states for the 2008 ozone NAAQS.  Again, looking at the necessary work in a vacuum, if EPA were to prioritize these actions over other competing mandatory duties the Agency must perform, EPA would need 139 business days to take action on the Kentucky Infrastructure SIP and 132 business days to take action on the Tennessee Infrastructure SIP (approximately 6.95 and 6.6 months, respectively).  EPA Facts 7-8.  EPA has more recently reviewed Tennessee's existing SIP provisions for ozone, and thus less time is estimated to conduct such review. McCarthy Decl. ¶ 34, Att. B n.1.

In taking final action on the 2008 ozone NAAQS infrastructure SIP submissions, EPA staff must first review the SIP submissions against each applicable element of CAA section 110(a)(2) and applicable regulations and guidance to determine whether the infrastructure requirements have been met.  McCarthy Decl. ¶ 25, Att. B.  This review, estimated to take 10 business days for Tennessee and 15 business days for Kentucky, entails a substantive determination whether the SIP submission meets all applicable legal requirements and whether the various SIP provisions cited in the SIP submission are either included in the SIP submission itself or are already in the state's existing EPA-approved SIP, and are correctly cited and described.  *Id.*  During this evaluation phase, EPA also must collect supporting documentation and language and citations from previous SIP approvals pertaining to specific substantive requirements.  *Id.*  If EPA identifies any questions

regarding the submission, EPA staff must engage in discussions with State staff.  *Id.*  This initial review also involves review by an EPA Regional staff attorney and, if necessary, EPA Headquarters staff and the EPA workgroup that addresses infrastructure SIPs for national consistency.  *Id.*

Next, EPA staff must draft the proposed action on the infrastructure SIP submission, estimated to take 3 business days for Tennessee and 5 business days for Kentucky.  McCarthy Decl. ¶ 26, Att. B.  If necessary, technical support documents or memoranda must be drafted for inclusion in the public docket to provide additional discussion and analysis.  *Id.*  The draft proposed rule must then be routed through the necessary staff and managers within EPA Region 4 for concurrence before being signed by the Regional Administrator, a process estimated to take 10 business days.  McCarthy Decl. ¶ 27, Att. B.  Once the Regional Administrator has signed the notice of proposed action, it must be transmitted to the Office of Federal Register for publication, estimated to take 2 business days.  McCarthy Decl. ¶ 28, Att. B.  Typically, a proposed rule is published in the Federal Register within 10 business days, although this publication time, which is beyond EPA's control, can take longer.  McCarthy Decl. ¶ 29, Att. B.

Once the proposed notice has been published in the Federal Register, a public comment period of 30 calendar days begins.  McCarthy Decl. ¶ 30, Att. B.  Because EPA allows two additional business days to accommodate any timely comments submitted by U.S. Mail, the estimated number of business days for the public comment period is 24 business days.  McCarthy Decl. ¶ 30, Att. B.  After the close of the public comment period, EPA staff review, analyze, and respond to comments, estimated to take approximately 50 business days.  McCarthy Decl. ¶ 31, Att. B.  Reviewing and responding to comments involves reviewing previous rulemakings to determine whether EPA has previously addressed the

issues raised in the comments, resolving the Agency's position on issues through the infrastructure SIPs workgroup, convening a sub-workgroup, and discussing the issues with management as necessary.  McCathy Decl. ¶ 31.

Next, EPA must draft and internally circulate the final Federal Register notice, which takes about 23 business days.  McCarthy Decl. ¶¶ 32-33, Att. B.  EPA may need to draft additional technical support documents or memoranda to support the final action.  McCarthy Decl. ¶ 32.  EPA anticipates that final action on the infrastructure SIP submissions for the 2008 ozone NAAQS will have nationwide factual, policy, and legal implications, requiring consultation with multiple offices within EPA to ensure national consistency.  *Id.*  Routing for a final rule typically requires more time than routing for a proposed rule because if any adverse comments are received, EPA Headquarters' Office of General Counsel must review the Agency's response to comments and more closely evaluate whether the proposed action should be finalized, modified, or halted for further evaluation and administrative process. McCarthy Decl. ¶¶ 32-33, Att. B.

In total, the estimated time for EPA to act on the Tennessee infrastructure SIP is 132 business days, and 139 business days to act on the Kentucky infrastructure SIP (approximately 6.6 and 6.95 months respectively, assuming 20 business days per month). *See* EPA Facts 7-8.  Again, these estimates presume – contrary to reality – that EPA could prioritize these actions over other mandatory obligations.  *Id.*

### 3.   Time Needed for EPA Action In Light of Competing Agency Priorities

Unfortunately, because EPA has numerous other obligations it must perform pursuant to statutory mandates, it would not be taking the actions at issue in this case in a vacuum where there are no other demands on agency resources.  *Natural Res. Def. Council v. Train*, the leading case on the issue of agency failure to meet statutory deadlines, establishes that

"budgetary commitments and manpower demands" are a legitimate constraint on an agency's ability to meet a statutory deadline when they are "beyond the agency's capacity or would unduly jeopardize the implementation of other essential programs." 510 F.2d at 712. As Ms. McCarthy describes in her Declaration, EPA's air pollution program is currently burdened by an extraordinarily large number of mandatory actions that affect the resources available to make the findings of failure to submit or to act upon the Kentucky and Tennessee infrastructure SIP submissions at issue in this case. EPA Fact 9. In light of the competing demands on EPA air program resources, EPA believes that a deadline of January 4, 2013, reflects the most expeditious schedules that EPA can reasonably meet under the circumstances without jeopardizing completion of EPA's many other mandatory duties. McCarthy Decl. ¶ 46. Aligning the dates for action on issuing the findings of failure to submit and taking action on the Kentucky Infrastructure SIP and the Tennessee Infrastructure SIP will also allow EPA to address most efficiently the potential outcomes of taking these actions.

### a. Competing Mandatory Obligations EPA Must Perform

Ms. McCarthy describes several different measures of the mandatory activities EPA is already obligated to perform in the remainder of 2012. One such measure is the Fall 2011 Semiannual Regulatory Agenda, which summarizes agency regulatory priorities and activities planned in the coming year. McCarthy Decl. ¶ 37, Att. C. The Fall 2011 Agenda lists 120 individual air program projects and provides the target completion dates for each project. McCarthy Decl. ¶ 37, Att. C. While not each project on this list is mandatory, many of them are. *See* McCarthy Decl. ¶ 37.

Another measure of the large volume of mandatory air program projects EPA is currently performing comes from the number of Consent Decrees and Settlement

Agreements establishing dates for action that EPA is already obligated to fulfill.  McCarthy

Decl. ¶ 38, Att. D.  Between January 2012 and the end of the year, the list contains

approximately 128 individual items for action that EPA must undertake pursuant to Consent

Decree or Settlement Agreement.  *Id.*  However, the number of items does not reflect the

complexity of the tasks.  For example, one item is the promulgation of the nationwide

designations for the 2008 ozone NAAQS by May 31, 2012, which required EPA to evaluate

all areas of the country to determine which were violating the NAAQS.  *Id.*  This mandatory

undertaking involved an in-depth factual and analytical process, and resulted in 45 areas

being designated as nonattainment.  *Id.*  As another example, EPA is subject to a Settlement

Agreement in *Sierra Club et al. v. Jackson*, No. 3:10-cv-04060-CRB (N.D. Cal.), which

obligates EPA to act on submitted infrastructure SIP submissions, or to promulgate a federal

implementation plan, or some combination of both, for the 1997 8-hour ozone NAAQS for

16 states in July and October of this year.  McCarthy Decl. ¶ 39.  EPA is also subject to a

Consent Decree in *WildEarth Guardians et al. v. Jackson*, No. 3:11-cv-00190-WHA (N.D.

Cal.), obligating the Agency to act on infrastructure SIPs for the 2006 24-hour PM2.5

NAAQS for 20 states. McCarthy Decl. ¶ 39.  Under that Decree, EPA must still take final

action on SIP submissions from 19 states in September of this year, which requires a

substantial commitment of agency resources.  *Id.*  Although Plaintiffs in this case point to

these types of Consent Decree and Settlement Agreement obligations as evidence of EPA's

"delay" in implementing the Clean Air Act, *see* Plfs. Mem. at 17, these court-ordered

obligations to perform non-discretionary duties represent a significant obligation of the

Agency's limited budgetary and manpower resources.

  In addition to actions EPA must take pursuant to Consent Decree and Settlement

Agreement obligations, EPA has a substantial number of actions related to SIPs the Clean

Air Act requires the Agency to take.  In each of the three most recent years (2009 to 2011), EPA has received on average 310 SIP submissions from states nationwide, and on average has acted on 198 submissions.  McCarthy Decl. ¶ 39, Att. E.[9]  So far in calendar year 2012, EPA has already published in the Federal Register approximately 273 regulatory actions related to SIPs.  McCarthy Decl. ¶ 39, Att. F.  As with the actions EPA must take pursuant to Consent Decrees and Settlement Agreements, EPA's statutorily mandated actions on SIPs do not necessarily reflect the significant level of resources and time that many of these actions require.  McCarthy Decl. ¶ 39.

There are numerous other tasks EPA is performing pursuant to statutory requirements between now and the end of 2012.  For example, EPA has a mandatory duty under CAA section 109 to review the NAAQS at five-year intervals; EPA has not completed that duty for the review of the PM NAAQS and has been sued to establish a schedule for EPA to complete the review.  *American Lung Ass'n v. EPA*, No. 1:12-cv-00243-RLW and No. 1:12-cv-00531 (D.D.C.); McCarthy Decl. ¶ 41.  The rulemaking at issue in that case is extremely complex, and has consumed and will continue to consume a substantial investment of the Agency's resources under the schedule that EPA has moved the court to adopt, which represents the most expeditious EPA can reasonably meet under the circumstances.  McCarthy Decl. ¶ 41.  Uncertainty exists, however, as the plaintiffs have moved the court to adopt a much shorter schedule, which EPA has informed the court would not allow the Agency a reasonable possibility of compliance.  *Id.*  As of the filing of this brief, oral argument in that case is scheduled for May 31, 2012, and an order will likely issue shortly thereafter.

EPA is also already working under numerous court-ordered deadlines for mandatory

---

[9]  The SIPs submitted in a given year and the SIPs acted upon in a given year are usually not the same SIP submissions, due to the time necessary for administrative actions on SIPs.  *See* McCarthy Decl. Att. E n.1.

statutory duties related to the Agency's Regional Haze program, air toxics program, greenhouse gases, and the Cross-State Air Pollution Rule.  McCarthy Decl. ¶¶ 40, 42-44.  Within each of these program areas are a multitude of statutorily-required obligations EPA must perform, including complex rulemakings with voluminous administrative records, permit actions, and responding to petitions for reconsideration of rulemakings.  *See generally* McCarthy Decl. ¶¶ 40, 42-44.  EPA is already subject to multiple Consent Decrees related to the Regional Haze program, under which the Agency must either take action on specific SIP submissions, or promulgate a federal implementation plan, or some combination of the two.  McCarthy Decl. ¶ 40.  These rulemakings are extremely complex and resource intensive, and are frequently controversial, leading to additional litigation and strain on the Agency's resources.  McCarthy Decl. ¶ 40.

Despite EPA's many competing mandatory obligations, the Agency has started working on taking action on the Kentucky and Tennessee infrastructure SIPs, thus exercising diligence in discharging its statutory duties.  McCarthy Decl. ¶¶ 23, 46; *see Train*, 510 F.2d at 713.  EPA believes that the most expeditious schedule by which it can complete these actions is January 4, 2013.  McCarthy Decl. ¶ 46.

> **b.**   **Efficiencies From Tying Final Action for the Duties in this Suit to a Single Date**

EPA believes that there would be significant benefit if the Court were to set a single date for taking final action on the duties at issue in this case:  making findings of failure to submit for the 40 states that have not yet submitted infrastructure SIPs (or portions of SIPs) addressing the 2008 ozone NAAQS, and taking final action on the Kentucky Infrastructure SIP and the Tennessee Infrastructure SIP.  McCarthy Decl. ¶ 45.  Plaintiffs, too, acknowledge the importance of keeping actions on SIPs from Kentucky and Tennessee on a schedule closely linked to the date for action on the findings of failure to submit for the other

1    states.  *See* Plfs. Mem. at 22-23.

2        EPA is concerned about efficiency and the consequences that may ensue from making

3    the findings of failure to submit and from taking action on the infrastructure SIP submissions

4    of Tennessee and Kentucky.  McCarthy Decl. ¶ 45.  Any one of these actions would trigger

5    the start of a 24-month schedule for EPA to promulgate a federal implementation plan for

6    that state for the unmet infrastructure SIP obligations.  *See* 42 U.S.C. § 7410(c)(1).  In

7    particular, any federal implementation plan addressing the requirements of CAA section

8    110(a)(2)(D)(i), 42 U.S.C. § 7410(a)(2)(D)(i), which has to do with prohibiting interstate

9    transport of pollutants, would impose a significant resource burden on EPA.  McCarthy Decl.

10   ¶ 45.  In the event that EPA makes a finding of failure to submit for the infrastructure SIPs

11   for the 2008 Ozone NAAQS for a large number of states, and in the event that EPA

12   disapproves the specific infrastructure SIP submissions for the 2008 Ozone NAAQS for

13   Tennessee and Kentucky at issue in this case, with respect to section 110(a)(2)(D)(i), it

14   would be preferable to have the 24 month schedule for the federal implementation plans for

15   all of the affected states run contemporaneously.  McCarthy Decl. ¶ 45.  Having the

16   schedules end at the same point will allow EPA to address the important issue of interstate

17   transport for the 2008 ozone NAAQS most efficiently, for both the states and EPA, because

18   the Agency will have the opportunity to address the issue of regional transport of ozone and

19   ozone precursors among the affected states in one combined regional effort, rather than

20   piecemeal and on divergent schedules that could lead to less effective outcomes.  McCarthy

21   Decl. ¶ 45.

22       **B.    PLAINTIFFS' PROPOSED SCHEDULE WOULD JEOPARDIZE
             EPA'S PERFORMANCE OF OTHER, NON-DISCRETIONARY
             ACTIONS**

23   Plaintiffs request that this Court issue an order requiring EPA:  (1) to make the

findings of failure to submit within 30 days of the issuance of the Court's order; and (2) to issue a proposed rule taking action on the Kentucky Infrastructure SIP and the Tennessee Infrastructure SIP within three months and a final rule within five months of the issuance of the Court's order.  Plfs. Mem. at 22-24.  These schedules are not feasible and would jeopardize EPA's performance of other mandatory obligations.  McCarthy Decl. ¶ 46.

In setting schedules for the performance of mandatory duties agencies have missed, courts have acknowledged the need to enter a schedule that allows the agency to perform the duty within a reasonable period of time.  *See, e.g.*, *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 58-59 (D.D.C. 2006) (observing that the plaintiff's proposed schedule "is simply too compressed . . . to afford any reasonable possibility of compliance" and ordering a schedule that was "more relaxed" than that proposed by plaintiff but "significantly more expedited than that sought by the defendant"); *Natural Res. Def. Council, Inc. v. New York State Dep't of Entl. Conservation*, 700 F. Supp. 173, 181 (S.D.N.Y. 1988) (allowing the agency a "reasonable period of time" in recognition of the necessity of "dealing with the issues on a pragmatic basis").

Although superficially Plaintiffs' and EPA's estimates for the time necessary to issue a finding of failure to submit are similar (30 calendar days estimated by Plaintiffs; 30 business days – or 1.5 months – estimated by EPA), these estimates do not account for EPA's heavy burden of other non-discretionary obligations, described above in Section II.A.3.a. Nor do Plaintiffs' schedules reflect the current serious financial and budgetary realities which require EPA to prioritize and schedule projects.  McCarthy Decl. ¶ 46.  However, Plaintiffs acknowledge that EPA would need a longer period of time to take final action on the Kentucky and Tennessee SIP submissions than on the findings of failure to submit, as action on the Kentucky and Tennessee submissions must undergo notice and comment rulemaking.

*See* Plfs. Mem. at 23.  Plaintiffs further acknowledge the benefit of having EPA take action on the findings of failure to submit and action on the Kentucky Infrastructure SIP and the Tennessee Infrastructure SIP at at least roughly the same time due to the likelihood of EPA having to promulgate federal implementation plans for multiple states simultaneously to address interstate pollution.  Plfs. Mem. at 22-23.  For these reasons, EPA asks the Court to set the date for the Agency to make the findings of failure to submit on the same date as the Agency takes action on the Kentucky and Tennessee SIPs.

Plaintiffs' request that the Court to order EPA to take final action on the Kentucky Infrastructure SIP and the Tennessee Infrastructure SIP is not feasible, both in light of how long it takes EPA to take such actions and because of EPA's competing mandatory obligations.  As EPA described above, taking action on these SIPs would take approximately 6.5 to 7 months.  Plaintiffs' rationale for why they believe EPA needs only five months to act on the Kentucky and Tennessee SIP submissions is not persuasive.  For example, Plaintiffs argue that EPA's review of the SIP submissions should not take long because EPA recently reviewed the infrastructure SIP for the 1997 ozone NAAQS, and presumably that prior SIP submission already addressed most of the elements relevant for the infrastructure SIP for the 2008 ozone NAAQS.  Plfs. Mem. at 23.  However, as Plaintiffs themselves note, a critical difference arises under the interstate pollution provisions in 42 U.S.C. § 7410(a)(2)(D)(i).  As EPA describes above, addressing interstate pollution is complicated and resource intensive. In addition, Plaintiffs' opinion that Kentucky and Tennessee's submittals are "obviously flawed" improperly assumes the substantive outcome of EPA's consideration, *see* Plfs. Mem. at 24, and does not provide a justification for EPA to depart from the full, required administrative process of reviewing the SIPs.  It is EPA's decision on the issue, as informed by the full public comment process, rather than Plaintiffs' preliminary opinion, that

ultimately will decide this question.  In particular, Plaintiffs fail to take into consideration

that once EPA begins the process of reviewing these submissions, the states in question may

elect to make additional SIP submissions to address section 110(a)(2)(D)(i) in some other

fashion, and that in the rulemaking process, the states or other commenters may submit

comments or analyses on this issue that EPA will be required to address during the

rulemaking process.  In addition, there may be other substantive concerns with respect to

other elements of section 110(a)(2) in the states' infrastructure SIP submissions that may

come to light during the rulemaking process.

  In light of the competing demands on EPA air program resources, EPA believes that a

deadline of January 4, 2013, reflects the most expeditious schedules that EPA can reasonably

meet under the circumstances.  McCarthy Decl. ¶ 46.  To give greater priority to these

actions would affect EPA's ability to meet these obligations in a timely or effective fashion,

and would jeopardize the completion of the many other mandatory duties that EPA is already

obligated to complete by the end of this calendar year.  *Id.*  Setting the schedules so that they

will end contemporaneously is also the most efficient and appropriate approach, because of

the obligations that may arise from the potential outcome of those actions.

## CONCLUSION

  For the reasons stated above and in the accompanying declaration of Regina

McCarthy, EPA's cross-motion for summary judgment should be granted, and the Court

should enter an order:

  (1)  entering summary judgment in favor of EPA on Plaintiffs' claim that EPA has

failed to issue a finding of failure to submit an "infrastructure" state implementation

plan ("SIP") for the 2008 ozone national ambient air quality standards ("NAAQS")

for the states of Delaware, Idaho, Indiana, Oregon, and West Virginia (for CAA

sections 110(a)(2)(A)-(C),(D)(i)(II), (D)(ii), (E)-(H), and (K)-(M) only); and dismissing those claims pursuant to Fed. R. Civ. P. 56.

(2)      directing EPA to:

a. By no later than January 4, 2013, sign a notice finding that the following States have failed to submit "infrastructure" SIPs for the 2008 ozone NAAQS: Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Hawaii, Illinois, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia (for CAA section 110(a)(2)(D)(i)(I) only), Wisconsin, and Wyoming;

b. By no later than January 4, 2013, sign for publication in the Federal Register a notice of the Agency's final action pursuant to Section 110(k) of the Clean Air Act, 42 U.S.C. § 7410(k), approving, disapproving, or approving in part and disapproving in part (a) the infrastructure SIP submittal submitted by Kentucky dated September 8, 2009 addressing the 2008 ozone NAAQS and (b) the infrastructure SIP submittal submitted by Tennessee dated October 19, 2009 addressing the 2008 ozone NAAQS.

EPA further requests that any order issued for purposes of the requirements of paragraphs (2)(a) and (b) above include the following clarification:  "It is understood that an infrastructure SIP does not include that portion of section 110(a)(2)(C), 42 U.S.C. §

1   7410(a)(2)(C), that pertains to nonattainment area plan requirements under part D.  It is

2   further understood that in the event that a state makes a complete infrastructure SIP

3   submission meeting the requirements of section 110(a)(2), as applicable, in whole or in part,

4   then EPA no longer has the legal authority or the obligation pursuant to section 110(k)(1)(B),

5   42 U.S.C. § 7410(k)(1)(B), to make a finding of failure to submit with respect to that state

6   and to those elements of the infrastructure SIP submission for which the state made such

7   submission.  In addition, it is understood that if a state withdraws, in whole or in part, a

8   submitted infrastructure SIP, then EPA no longer has the legal authority or the obligation

9

10  pursuant to section 110(k), 42 U.S.C. § 7410(k) to take action on such SIP."

11

12

13                                              Respectfully submitted,

14                                              IGNACIA S. MORENO
                                                Assistant Attorney General
15                                              Environment and Natural Resources Division

16                                               /s/  Christina L. Richmond
                                                CHRISTINA L. RICHMOND
17                                              Trial Attorney
                                                United States Department of Justice
18                                              Environmental Defense Section
                                                P.O. Box 7611
19                                              Washington, D.C. 20044
                                                Telephone:  (202) 514-3376
20                                              Fax: (202) 514-8865
                                                Email: christina.richmond2@usdoj.gov
21
                                                *Attorneys for Defendant*
22  Of Counsel:

23  GEOFFREY L. WILCOX
    United States Environmental Protection Agency
24  Office of General Counsel
    Washington, D.C.

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

I certify that on May 29, 2012, a true and correct copy of the foregoing

3

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

4

AND MEMORANDUM IN SUPPORT THEREOF was served electronically via the Court's

5

6

e-filing system to Counsel of Record.

7

8

/s/ Christina L. Richmond
CHRISTINA L. RICHMOND

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28