1  Robert Ukeiley (admitted *Pro Hac Vice*)
   Law Office of Robert Ukeiley
2  507 Center Street
   Berea, KY 40403
3  Telephone: (859) 986-5402
   Email: rukeiley@igc.org
4  *Counsel for Plaintiffs Midwest Environmental Defense Center and Sierra Club*

5  James Jay Tutchton
   WildEarth Guardians
6  6439 E. Maplewood Ave.
   Centennial, CO 80111
7  (720)-301-3843
   jtutchton@wildearthguardians.org
8  Counsel for Plaintiff WildEarth Guardians

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS, <br>     Plaintiff, <br> v. <br> ROBERT PERCIASEPE,[1] <br> in his official capacity as Acting Administrator of the United States Environmental Protection Agency, <br>     Defendant. | Case No. 4:11-cv-05651-YGR <br><br><br> consolidated with, |
| MIDWEST ENVIRONMENTAL DEFENSE CENTER, and SIERRA CLUB, <br>     Plaintiffs, <br> v. <br> ROBERT PERCIASEPE, <br> in his official capacity as acting Administrator of the United States Environmental Protection Agency, <br>     Defendant. | Case No. 4:11-cv-05694-YGR <br><br> PLAINTIFFS' NOTICE AND MOTION FOR ATTORNEYS' FEES <br> Hearing: September 3, 2013 <br> Time:   2 pm <br> Judge: Hon. Yvonne Gonzales Rogers |

---

[1] Pursuant to Fed. R. Civ. P. 25, Mr. Perciasepe is automatically substituted for his predecessor in office, Lisa P. Jackson.

| | |
|---|---|
| 1 | |
| 2 | Please take notice that on September 3, 2013 at 2:00 p.m. or as soon thereafter as |
| 3 | counsel can be heard, Plaintiffs Sierra Club, Midwest Environmental Defense Center |
| 4 | (MEDC) and WildEarth Guardians will move this Court, located in the United States Court |
| 5 | House located at 1301 Clay Street, Oakland, California, for attorneys' fees and costs. |

**REQUESTED RELIEF**

Plaintiffs request $77,460.59 in attorneys' fees and costs, pursuant to 42 U.S.C. § 7604(d).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs in these consolidated matters, Sierra Club, Midwest Environmental Defense Center and WildEarth Guardians, respectfully request $77,460.59 in attorneys' fees and costs, pursuant to 42 U.S.C. § 7604(d). Undersigned counsel is usually able to settle attorneys' fees issues in these Clean Air Act "deadline" suits with counsel for the Environmental Protection Agency (EPA). In fact, in this case, based on initial discussions with defense counsel, Plaintiffs were optimistic that they would be able to settle the attorneys' fee issue in this case. Plaintiffs made a fee settlement offer to EPA on April 29, 2013, which is before the May 6, 2013 deadline which EPA now apparently claims applies to motions for attorneys' fees in this case. Defense counsel acknowledged receipt of Plaintiffs' settlement offer on May 2, 2013, but made no mention of a belief that there was a May 6, 2013 deadline. It was not until May 31, 2013, after the May 6, 2013 alleged deadline had passed, that Defense counsel first raised the issue of timeliness of a motion for fees. Thus, Plaintiffs are now filing this motion.

However, for judicial economy and to preserve the parties' resources, as will be seen below, Plaintiffs have tried to narrow the disputed issues as much as possible. One other thing the Court should keep in mind is that EPA, as part of the United States government, does not pay any interest in any form on attorneys' fees claims. Thus, delays in resolving attorneys' fees claims do not prejudice EPA at all. Rather, delay saves the government money in light of the time value of money.

**II.     BACKGROUND AND FACTS**

This is a Clean Air Act "deadline" suit brought by the undersigned public interest counsel on a *pro bono* basis and public interest staff counsel on behalf of three non-profit

environmental organizations trying to implement the 2008 national ambient air quality standard for ozone. Ozone, commonly referred to as smog, harms the health of millions of people in the United States, actually killing some. *See* e.g. Case 11-5694 Answer [Dk # 20] p.3 l.8-11; Case 11-5651 Answer [Dk # 19] p.1 l.22. Ozone also damages crops and native ecosystems. *See* Case 11-5694 Answer to Second Amended Complaint [Dk # 29] p.3l.23-24. As one district court explained, EPA has an "unblemished record of nonperformance in this corner of the Clean Air Act[.]"*Sierra Club v. Johnson*, Civ. Act. No. 04-2163-JR, Slip. Op. at 7 (D.D.C. Apr. 6, 2005).

On October 17, 2012, the Court issued an order granting summary judgment to Plaintiffs on all claims remaining at that time, except as regards to a few states which had taken action and thus obviated the relevant mandatory duty. *See* October 17 Order [DK#64]. Shortly thereafter, Courtroom Deputy Frances Stone contacted undersigned counsel and requested that counsel prepare a proposed judgment and submit it to the Court for the Court to enter. *See* Declaration of Robert Ukeiley in Support of Motion to Enter Judgment [Dk#75-1] (Ukeiley Judgment Dec. at ¶ 3). Undersigned counsel prepared a proposed judgment and emailed it to defense counsel on October 22, 2012. Ukeiley Judgment Dec. [Dk#75-1]at ¶ 4. Later that same day, undersigned counsel emailed a copy of the proposed judgment he prepared to the Court's proposed order email address and cced defense counsel on the email. Ukeiley Judgment Dec. [Dk#75-1] at ¶ 5.

Undersigned counsel assumed that the Court would enter judgment and that the entry of that judgment would start the 14 day "clock" by which Plaintiffs would have to submit their motion for attorneys' fees. Ukeiley Judgment Dec. [Dk#75-1] at ¶ 6. This understanding is consistent with the last Clean Air Act deadline suit that undersigned litigated to judgment in this

Court. The Court in that case entered a separate document entitled "Judgment" after issuing an order granting summary judgment. *See Communities for a Better Environment v. U.S. Environmental Protection Agency*, 3:07-cv-3678-JSW, Dk#44, Judgment (N.D. Cal. Nov. 24, 2008).

On November 14, 2012, more than 14 days after the Court entered an order on summary judgment, EPA moved to amend the October 17, 2012 order. *See* Defendant's Notice and Motion to Amend Order of October 17, 2012; Memorandum in Support Thereof, Dk#65. On December 7, 2012, the Court granted EPA's motion in part. *See* Order Granting in Part EPA's Motion to Amend Order, Dk#69. If Plaintiffs had filed for attorneys' fees within 14 days of the Court's October 17, 2012 order, they would have had to file a second motion for fees or at least amend their original motion after the Court issued its December 7, 2012 order to cover counsel's work on that motion.

On March 7, 2013, EPA published notice of the final action required by the Court's December 7, 2012 Order. *See* 78 Fed. Reg. 14,681 (Mar. 7, 2013). At that point, Plaintiffs were assured that EPA would not be asking for any additional extensions. EPA asks for extensions of court ordered deadlines very frequently. However, because the Court had not entered judgment yet, and because of the press of other substantive matters, Plaintiffs did not make an offer to settle the costs of litigation, including attorneys' fees, until April 29, 2013.[2] Ukeiley Judgment Dec. [Dk#75-1] at ¶ 7. Defense counsel acknowledged recent receipt of this fee offer prior to May 6, 2013 and made no mention of any impending deadline. On May 31, 2013, Defense Counsel responded to the Plaintiffs' fee offer by claiming that the 14 day clock to file for fees had started on December 7, 2012 with the Court's order on the motion to amend

---

[2] For the sake of completeness, Plaintiffs will mention that the parties had discussed the scope of what fees could be included in a settlement back in June 2012 before the Court granted summary judgment.

and thus ended on December 21, 2012. Ukeiley Judgment Dec. [Dk#75-1] at ¶ 8. After further discussions on the matter, the parties came to an impasse requiring the Court's intervention. Ukeiley Judgment Dec. [Dk#75-1] at ¶ 9.

On July 3, 2013, the Court entered its Order Denying Administrative Order to Enter Judgment. Dk#78. In the July 3, 2013 Order, the Court held that Judgment had already entered in this matter by operation of the 150 day clock in Fed.R.Civ.P. 58. However, the Court said that it was not addressing the issue of whether Plaintiffs can file a motion for attorneys' fees at that time.[3]

### III. ARGUMENT

#### A. TO THE EXTENT THE COURT FINDS THIS MOTION UNTIMELY, PLAINTIFFS HAVE COMPELLING GOOD CAUSE

The Ninth Circuit has applied Rule 54(d)(2)(b) as an appropriate basis for cutting off fee requests. *See Port of Stockton v. Western Bulk Carrier KS*, 371 F.3d 1119, 1122 (9th Cir. 2004). However, the deadline is not jurisdictional and a motion after the 14 days can be considered with a "compelling showing of good cause." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 889-90 (9th Cir. 2000).[4]

In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 383 (1992)(*Pioneer*) the Supreme Court held that an attorney's mere inadvertent failure to file by a deadline could constitute excusable neglect. In *Pioneer*, a lawyer missed a deadline, "of which he was unaware, [because it] came at a time when he was experiencing 'a major and significant disruption' in his professional life caused by his withdrawal from his

---

[3] "And if disposition of the motion results in an amended judgment, the amended judgment must be set forth on a separate document." Rule 58, Advisory Committee's note re 2002 amendment
[4] In the alternative, the Court can consider this a motion for extension of time under Fed.R.Civ.P. 6(b)(1)(B) pursuant to which Plaintiffs would have to establish excusable neglect.

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES p. 6 – 11-cv-05651-YGR

former law firm[.]" *Id.*, 507 U.S. at 384. In that case under the bankruptcy rules which the Court found was equivalent to the Fed.R.Civ.P. 6, the Supreme Court held that excusable neglect could include "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.*, 507 U.S. at 388. The Supreme Court concluded that ultimately the question is an equitable one that should take into "account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*, 507 U.S. at 395 (footnote omitted).

Here, multiple factors lead to Plaintiffs filing this Motion at this time. First, EPA appealed this Court's amended order. Plaintiffs choose to wait until after the appeal, which could have mooted the attorneys' fee issue, was resolved before filing for attorneys' fees. "The new all-purpose definition of the entry of judgment must be applied with common sense to other questions that may turn on the time when judgment is entered." Rule 58, Advisory Committee's note re 2002 amendment.

Second, Plaintiffs choose to wait until after EPA had complied with the requirements of Court's amended order before filing for attorneys' fees. It is all too often that EPA requests extensions of court ordered deadlines in Clean Air Act deadline suits. These requests for extensions require plaintiffs to incur additional billable time which is recoverable. This can cause the parties and possibly the courts to have to deal with the attorneys' fees issue more than once. Sometimes that is unavoidable. However, in this case, Plaintiffs were in a position to try to minimize the parties and the Court efforts by waiting to file for attorneys' fees.

Third, the parties were engaged in settlement discussions regarding fees. EPA only raised the issue of timeliness after the alleged deadline passed. This ended the parties negotiations.

Fourth, based on the Court's request for a proposed judgment, Plaintiffs were expecting the Court to issue a judgment which would set an extended deadline for the filing of a motion of attorneys' fees. While it would have been more prudent for Plaintiffs to file a protective motion for extension to file a motion for fees, such a motion would have been largely redundant of the proposed judgment which included an extension of the deadline for filing for fees, which Plaintiffs had already submitted to the Court.

These four facts constitute the compelling showing of good cause which is all the Ninth Circuit had held is necessary to consider a motion for fees after the 14 day deadline. *Kona Enters.,* 229 F.3d at 889-90. However, turning to the factors the Supreme Court has laid out in *Pioneer*, there is no danger of prejudice to EPA from the delay in Plaintiffs filing their motion. Rather, the opposite is true. Because EPA does not pay any interest in any form on attorneys' fees in Clean Air Act cases, the longer the delay, the less the amount EPA has to pay, considering the time value of money. In addition, by waiting, EPA's lawyers avoided the possibility of having to deal with multiple fee claims for the merits of the case and then post-order issues.

A two and a half month delay is not particularly long in the context of Clean Air Act litigation and it has no other impacts on this judicial proceeding, which is otherwise complete. While the filing of the motion was within the control of the Plaintiffs, the above factors demonstrate that the delay was part of a good faith effort to minimize the expenditure of the parties' litigation resources and judicial economy.

**B. PLAINTIFFS ARE ENTITLED TO $77,460.59 USING THE LOADSTAR METHOD**

The starting point for determining a reasonable fee is the "lodestar" figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). There is a strong presumption that the lodestar represents a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, (1986), *reversed on other grounds after rehearing,* 483 U.S. 711 (1987) (*Delaware Valley I*).

In any effort to minimize the disputed issues, Plaintiffs are willing to accept a rate of $450 per hour for attorneys Robert Ukeiley and Jay Tutchton who are public interest environmental attorneys with experience similar to senior level partners at large firms. Plaintiffs are also willing to accept a rate of $200 per hour for Adrian Shelley, who was a law fellow in the Law Office of Robert Ukeiley working on this case and is the equivalent of a first or second year associate at a large firm. Finally, Plaintiffs are willing to accept a rate of $115 for Megan Naseman who was a paralegal in the Law Office of Robert Ukeiley working on this case. Plaintiffs' counsel discussed these rates with Defense counsel who stated: "Based on litigation considerations, EPA does not oppose the use of these rates solely for the purpose of this particular matter."

As to reasonable hours, again in an effort to resolve disputed issues, Plaintiffs are willing to exercise their billing discretion to significantly cut their billable time. First, Plaintiffs are willing to not bill for any time spent dealing with the issue of the timeliness of motion. In fact, Plaintiffs will not bill for any time incurred after April 29, 2013, which is when Plaintiffs made their first fee offer to Defendants.

Plaintiffs are also not requesting any billable time which is reasonably attributable to the claim regarding the alleged mandatory duty to promulgate Prevention of Significant Deterioration regulations. The Court dismissed this claim. Plaintiffs zeroed out these entries in their attached time sheets.

Furthermore, Plaintiffs are willing to exercise their billing discretion to reduce their hours by 10% across the board. This should eliminate any arguments EPA has about particular entries or categories of entries.

Based on the time sheets attached to the Declarations of Robert Ukeiley and Jay Tutchton and considering all the above reductions, Plaintiffs are requesting the following:

| Timekeeper | Rate | Hours(10% discounted) | Total |
|---|---|---|---|
| Robert Ukeiley | $450 | 97.47 | $43,861.50 |
| Jay Tutchton | $450 | 31.23 | $14,053.50 |
| Adrian Shelley | $200 | 88.65 | $17,730 |
| Megan Naseman | $115 | 2.7 | $310.50 |
| Expenses[5] | | | $1,195.09 |
| Total | | | $77,460.59 |

$77,460.59 is very reasonable for a Clean Air Act case in the Bay Area which was litigated to summary judgment and also involved extensive settlement negotiations.

IV. CONCLUSION

Therefore, the reasons explained above, Plaintiffs respectfully request $77,460.59 in costs of litigation pursuant to 42 U.S.C. § 7604(d).

---

[5] Plaintiffs are also willing to waive their expert witness fees.

Respectfully submitted,

/s Robert Ukeiley

ROBERT UKEILEY (Admitted *Pro Hac Vice*)
Law Office of Robert Ukeiley
507 Center Street
Berea, KY 40403
Telephone: (859) 986-5402
Facsimile: (866) 618-1017
rukeiley@igc.org

*Counsel for Plaintiffs Midwest Environmental Defense Center and Sierra Club*

/s James Jay Tutchton

James Jay Tutchton
WildEarth Guardians
6439 E. Maplewood Ave.
Centennial, CO 80111
(720)-301-3843
jtutchton@wildearthguardians.org

*Counsel for Plaintiff WildEarth Guardians*

Dated: July 22, 2013